SUBRT, Respondent, vs. SUBRT, Appellant.

*April 10—May 7, 1957.*

For the appellant there was a brief and oral argument by *Oscar Rademacher* of Medford.

For the respondent there was a brief and oral argument by *Francis R. Parks* of Rice Lake.

BROWN, J. The appeal challenges the merits of the trial court's findings both in respect to its denial of a divorce to the husband and in its award of custody. These findings are:

"7. That neither of the parties hereto sustained their burden of proof as to the allegations which would have entitled either of them to a divorce and that it is not fit and proper for a divorce to be granted either of the parties. That neither of the parties hereto are fit and proper persons to have the care, custody, and control of the minor children. That Mrs. Ben Walker of Rice Lake, Wisconsin, the maternal grandmother of the children of the parties, is a fit and proper person to have the care and custody of the children. That Mrs. Ben Walker is a resident of the state of Wisconsin and willing to receive and properly care for such children, and that the granting of their custody to her will promote the welfare of the children."

Findings of the trial court are not to be disturbed on appeal unless they are contrary to the great weight and clear preponderance of the evidence. *Gordon v. Gordon* (1955), 270 Wis. 332, 339, 71 N. W. (2d) 386. The weight of the evidence and the credibility thereof were matters entirely within the province of the court as the trier of the facts. Id., page 340.

The trial was protracted and the record is voluminous. We have examined it all. The parties were married in 1946 when the girl was nineteen and the man about twenty-four. They came from farm families. When they had been married a few years they bought a 40-acre farm near Rice Lake in joint tenancy with money Mr. Subrt inherited from his parents. They paid $2,600 in cash and gave a mortgage of $2,500 for the balance. They worked the farm together when Mr. Subrt was at home, and he also worked a nine-hour day in a mill in near-by Rice Lake. While he was so em-

ployed Mrs. Subrt did a man's work in the cattle barn and in the fields, trading her labor on other farms when necessary to get additional labor on her own. By industry and thrift they paid the mortgage in two and one-half years and at the time of the trial had accumulated approximately $750 in a joint bank account, $700 in cash kept in the house, eight head of dairy cattle, some farm machinery, and two automobiles. The parties have two children, boys, who at the date of the trial, in March and June, 1956, were ten and eight years old. They are healthy, well-cared for, and attend school. Mrs. Subrt had been born and raised a Roman Catholic. Her husband described himself a free-thinker which, he said was a person who did not believe in a personal God or in the immortality of the soul but whose religion was "Do unto others as they do unto you." (Sic.)

In January, 1956, Mrs. Subrt took a few personal belongings, $700 in cash, an automobile, and the two children and went to live with her mother in Rice Lake. She commenced this action the same day. She charges her husband with parsimony so extreme that it impairs the well-being of herself and the children and with interference in the practice of the religion in which she was raised and in which she wishes to raise the children. He accuses her of misconduct with other men and with neglecting her duties as wife and mother by frequenting taverns when he is away at work.

A recitation of the evidence material to the controversial findings, as already quoted, would benefit no one. It is obvious from these findings that the trial court either disbelieved the testimony upon which the husband relied or did not draw from it the inferences which the husband thought should be drawn. It is that court's function to determine the probative effect of the evidence. This record does not permit us to say that offenses by the wife of sufficient gravity are established with such certainty that the refusal of the trial court to grant the husband a divorce is reversible error.

It is unnecessary to comment on the evidence in support of Mrs. Subrt's complaint, for she has not appealed from the judgment or otherwise attacked the findings.

The custody issue is more complex. In the absence of an appeal by Mrs. Subrt we need consider it only from the standpoint of her husband. In the first place, he submits that, in divorce, jurisdiction to determine custody of children is limited by statute to those cases in which the divorce is granted. When the present judgment was rendered, June 26, 1956, the applicable statute read:

"247.24 JUDGMENT; CARE AND CUSTODY, ETC., OF MINOR CHILDREN. In rendering a judgment of nullity of marriage or for divorce, whether from the bond of matrimony or from bed and board, the court may make such further provisions therein as it shall deem just and proper concerning the care, custody, maintenance, and education of the minor children of the parties, and give the care and custody of the children of such marriage to one of the parties to the action, or may, if the interest of any such child shall demand it, and if the court shall find that neither of the parents is a fit and proper person to have the care and custody of any such child, give the care and custody of such child to any fit and proper person, who is a resident of this state and willing to receive and properly care for such child, or to any institution incorporated for such purposes and willing and authorized to receive and care for such child, having due regard to the age and sex of such child. . . ."

Our decision in *Dovi v. Dovi* (1944), 245 Wis. 50, 13 N. W. (2d) 585, is not in accord with appellant's contention. There we held that a court of equity in which action for divorce is pending has the inherent jurisdiction to protect the interest of the child of the parties whether the divorce is granted or not, and jurisdiction to determine custody in accordance with the child's interest is neither dependent upon statute, nor limited by it. The *Dovi* divorce action was brought in the circuit court while the instant action is in county court but that is immaterial here because ch. 154,

Laws of 1927, with certain exceptions not involved at present, made the county court of Barron county "a court of general jurisdiction, with the same power and jurisdiction as have been heretofore, are now, or may hereafter be conferred by the constitution or statutes of this state upon the circuit courts of the state." (Wis. Anno. (1950), p. 1623, sec. 1 (3).) Therefore we conclude that the trial court had jurisdiction to determine the custody of the two children and only its discretion in making the order of custody is in question now.

In custody cases it is impossible to fix rules which are inflexible. Each case must be considered in the light of all the facts and circumstances that appear in the record. The welfare of the child is the paramount and controlling consideration in determining the custody of a minor child. In reviewing custody cases this court relies heavily upon the determination of the trial court and, except in the very few cases where there is a clear abuse of discretion, the court's order should prevail. These fundamental principles have been stated often and recently, as in *Dodge v. Dodge* (1955), 268 Wis. 441, 67 N. W. (2d) 878, and reiterated in *State ex rel. Hannon v. Eisler* (1955), 270 Wis. 469, 71 N. W. (2d) 376. The latter case also recognizes the obvious fact that the prospective home surroundings of the children, the character of those who would associate with them, and their opportunities for education and moral training are matters proper to be considered by the court.

In the case at bar the trial court does not indicate the evidence on which it relied in finding that Mr. Subrt is an unfit person to have custody of his children. There is evidence in the record, however, that would support the finding. Mrs. Subrt testified that the children are afraid of their father and hated to see him come home; that his parsimony deprived them of sufficient food and clothing; that much of the clothing they did have was from her mother. With

consent of counsel the court took the children into chambers and talked privately with them. This consent implies consent that the court may consider whatever was revealed there. We do not know what the court learned from the children nor what part, if any, of Mrs. Subrt's testimony it believed. It only tells us that the children bore no ill will toward either parent and that since they had lived with their grandmother they were attending church regularly and were very happy about it. But it is in evidence without contradiction that Mr. Subrt had no plans at all for the children's moral education. For their physical welfare his plan was to hire some respectable woman who would keep house for him and them. These are very young boys, needing love and security. There is a complete absence of evidence of any care or any affection that he ever bestowed on either of them or any interest he has in them other than to keep them from their mother. Relying heavily, as we must, upon the determination of the trial court, we consider that the record supports the court's finding regarding the fitness of the father to be granted their custody. Concerning the grandmother to whom custody is awarded, no attack is made upon her personal fitness but it is submitted that her home is unfit because of the unfitness of their mother who will reside there, too. All the testimony shows that Mrs. Subrt gave the children good care in her own home. The offenses with which her husband charged her (which the trial court did *not* find she committed) at any rate did not occur in the children's presence. The court could reasonably believe that Mrs. Subrt's behavior in her mother's home would not be harmful to her sons. If later developments show the hope to be vain, suitable modifications may be made in the order for custody. Certainly, the situation is far from ideal but under all the circumstances we conclude that the trial court's determination of the custody question, as well as its disposition of the merits of divorce, was within a permissible exercise of its discretion.

Discretionary, too, is the allowance by the trial court of attorney fees and suit money to the plaintiff, and the amount of support money to be paid by the defendant while custody of his children is intrusted to their grandmother. We find no abuse.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*dissenting in part*). I agree with the affirmance of the judgment except on the matter of custody. Much of the testimony which tended to cast an unfavorable light upon the husband and wife must have been disbelieved by the trial court or else considered to have been explained away or else thought to establish facts not sufficiently serious to be grounds for divorce. Upon that state of the record we cannot determine whether there was a sufficient basis for the findings of the trial court that the husband is unfit to have custody nor that it is for the best interest of the children that they be with the grandmother. In my opinion the part of the judgment relating to custody and payment of support money should be reversed, and the cause remanded for additional findings upon the subject of custody.

I am authorized to state that Mr. Justice STEINLE joins in this dissent.

CURRIE, J. (*dissenting*). I concur in the dissenting opinion filed by Mr. Justice FAIRCHILD in so far as the issue of custody is concerned. However, I also dissent on the issue of whether the court committed error in denying the defendant husband a divorce on his counterclaim. This is because I am of the opinion that the finding of fact by the trial court to the effect that the defendant husband had failed to prove a case of cruel and inhuman treatment against the wife is against the great weight and clear preponderance of the evidence.