LARSON, Appellant, v. LARSON, Respondent.

*January 31—March 4, 1966.*

---

294

For the appellant there was a brief by *Crawford, Craw-ford & Cirilli,* and oral argument by *Brice T. Sullivan,* all of Superior.

For the respondent there was a brief by *Borg, McGill & Moodie* and *Toby E. Marcovich,* all of Superior, and oral argument by *Mr. Marcovich.*

BEILFUSS, J.   Two issues are presented: (1) Does the evidence support the finding that the plaintiff was unfit to have the custody of the minor child?   (2) Did the trial court abuse its discretion in receiving the report and recommendations of the welfare department and in re-fusing to order an additional investigation and report?

This court is firmly committed to the principle that the findings of fact and orders of the trial court con-cerning the custody of minor children in divorce actions will not be set aside or reversed unless clearly against the great weight and clear preponderance of the evidence, or unless there is a clear abuse of discretion.

"Custody matters are highly discretionary and the rule is well established that the trial court's determination will not be upset in the absence of a clear abuse of dis-cretion." *Belisle v. Belisle* (1965), 27 Wis. (2d) 317, 321, 322, 134 N. W. (2d) 491.

"As has been repeatedly held by this court, the matter of the custody of children in divorce actions is a matter peculiarly within the jurisdiction of the trial court, who has seen the parties, had an opportunity to observe their conduct, and is in much better position to determine where the best interests of the child lie than is an ap-pellate court." *Adams v. Adams* (1922), 178 Wis. 522, 525, 190 N. W. 359; *Hamachek v. Hamachek* (1955), 270 Wis. 194, 202, 70 N. W. (2d) 595.[1]

[1] See also *Wendland v. Wendland* (1965), 29 Wis. (2d) 145, 138 N. W. (2d) 185, and cases cited therein.

Counsel for the mother, Kathleen, contends that the trial court abused its discretion in awarding the custody of the child to the father. He reasons that the law favors the mother if she is a fit and proper person, other things being equal, and that the controlling consideration is the best interest of the child. These propositions are basic and are not in dispute.

The crucial issue is the finding of the trial court "that the plaintiff is an unfit person to have custody of the minor child of the parties."

A finding of unfitness on the part of one parent is tantamount to a determination that the best interest of the child requires that its custody be placed with the other parent.

In *Hamachek v. Hamachek, supra,* at pages 198, 199, speaking through Mr. Chief Justice FAIRCHILD, we stated:

"The welfare of the child is, of course, the prime consideration of a court in granting or changing the custody of any child. *Acheson v. Acheson,* 235 Wis. 610, 294 N. W. 6. The law involved here is that whenever the welfare of any child will be promoted thereby, the court granting the decree of divorce 'shall always have the power to change the care and custody of any such child, either by giving it to or taking it from such parent or other person or such institution, provided that no order changing the custody of any child shall be entered until after notice of such application shall have been given.' Sec. 247.24, Stats. *When a court finds, as it did here, that a parent is unfit to have custody of a child, it implicitly follows that changing such custody from such parent is for the welfare of the child.*

"Courts have no power in awarding custody of minor children other than that provided by statute. The only provision in the statutes for awarding custody of minor children to an institution or to a person other than the parents is that which is applicable to cases where both the mother and father are found unfit to have custody. In *Vogel v. Vogel,* 259 Wis. 373, 375, 48 N. W. (2d) 501, it was held that:

" 'When the wife is proven to be morally unfit to have the custody of the minor children of a married couple and there is no testimony that the father is incompetent, unfit, or unworthy to have the care and custody of the children, their care and custody should be awarded to him if he can provide for them a suitable home with competent and proper supervision in his absence.' " (Emphasis added.)

Without detailing the testimony, it is apparent that Kathleen committed a serious moral indiscretion as evidenced by the birth of her illegitimate child while she was the wife of Donald. The record also reveals that prior to and more so after the separation in February of 1963 she associated with other men under circumstances that can easily suggest moral laxity; that she kept irregular hours and did not always keep the child as clean as she should have been, and did not feed the child at regular hours. After the separation she moved to an area that has several bars and taverns, and she frequented them on many occasions. Her conduct while living in South Superior, from February, 1963, to January, 1964, might well be characterized as notorious, and the care of her child indifferent and inadequate. Her parents prevailed upon her to change her ways and return to their home. She refused to comply with their requests, stating that her husband had been cruel and unfair and that she did not care whom she hurt excepting the child Joan. Both her parents told her they were "through with her completely."

Kathleen did, however, return to her parents' home in January of 1964. Unquestionably her moral conduct and the physical care given to Joan have improved. Testimony by Kathleen, her parents and others was given to this effect. In considering the improvement from the time she returned to her parents' home, it is significant that her pregnancy was well along; that she was hospitalized a short time for a nervous condition; that she gave birth to her second child in May and that the trial was had in

July. Her physical confinement, through necessity, would curtail her social activities during this period. At the time of trial she had no plans for the future. She did not know whether, or how long, she would remain with her parents, although they stated she could remain as long as necessary.

The trial court, after considering all of the evidence and recognizing the improvement, still found Kathleen to be unfit to have the custody of the minor child Joan.

The finding of unfitness of a parent to have custody of his or her child, especially a young mother, is drastic and severe and should be supported by substantial evidence. A court should not necessarily feel impelled to make a finding of unfitness on the part of the mother when it has determined that the best interests of the child demand its custody be placed in the father. The rule that the law favors the mother as to the custody of the minor child is a strong and a fundamentally natural consideration in determining custody, but it does not follow that a mother must be found unfit before custody can be denied to her. In many instances the mother can be a fit person to have the custody, but because of other comparative circumstances custody to the father serves the best interest of the child.

Nor should the fact that it has been clearly demonstrated that a parent has been unfit in the past preclude him or her from establishing that he or she is now fit morally and otherwise to have the custody of the minor child. Fitness should be determined as of the time of the hearing and as to its future probability. Further, the finding of fitness or unfitness should be subject to subsequent determination upon the then existing circumstances.

In considering the question of fitness or unfitness evidence of past conduct, prior physical and emotional conditions, and other previous circumstances, is relevant and material insofar as it constitutes a reasonable guide to present qualifications and future probabilities. Evidence

of this kind, however, should not be received only to bolster a feeling of outrage or to re-emphasize the facts that originally gave rise to the divorce or separation.

The trial court did consider all of the evidence, both as to the circumstances before and after the date of the report. The written record does not afford us an opportunity to see and hear the attitudes, demeanors and appearances of the parties and other witnesses. These evaluations are particularly important in custody matters. The credibility of witnesses and the weight of the testimony is best determined by the trial court. From the record before us we cannot conclude that the finding of unfitness by the trial court is against the great weight and clear preponderance of the credible evidence; on the contrary, it is supported by ample credible evidence and must be affirmed.

Appellant, Kathleen, contends that the welfare department report made almost sixteen months before judgment was too remote to be considered because appellant's circumstances had changed. She also alleges prejudicial error in the refusal by the court to order a new and up-to-date investigation. Appellant must show an abuse of discretion to prevail on this argument.

An independent social welfare report need not be requested by the court, and if requested, is not controlling. The use of and the weight to be given such reports must rest upon the sound discretion of the trial court.

The court indicates in its discussion of appellant's motions for new trial that appellant made a written request for an up-to-date investigation on June 30, 1964, almost a month before testimony was taken. However, appellant has not included any such request as part of the record, nor has she included that report itself. The record on the motions for new trial was made on February 15, 1965, some seven months after the testimony was closed.

On motions for new trial the court stated that appellant requested the report, had a copy of it, and did

not object to its admission into evidence. Appellant did object to the report on grounds of hearsay and not the best evidence. The record indicates that both the report and the deposition of the welfare worker were received subject to the objection. The contents of the report are unknown to us because the report, although marked as an exhibit and received subject to objection, has not been made a part of the record on this appeal.

The testimony of the welfare department caseworker was taken by deposition on July 23, 1964, a day before the trial and before any other testimony was taken. Thus, unlike the situation in *Wendland, supra,* she was not asked to comment on how alleged changes in circumstances would affect her report and her opinion that custody should be given to the father for the best interests of the child. She had concluded that appellant was too immature to accept responsibility. The caseworker stated that assuming appellant was then living with her parents she would recommend a new report, if ordered by the court.

Exclusive of the report, the evidence quite extensively portrays the behavior and attitudes of Kathleen both before and after October 9, 1963, the date of the report. The change of circumstances was after January 1, 1964.

The plaintiff had the opportunity and in fact did present several witnesses of her own choosing as to any change of circumstances. It also appears that the trial court considered this testimony.

"Mr. Sullivan: There was considerable change—it is our contention there was considerable change in the circumstances.

"Judge Dahl: The Court in its opinion upon the trial of the case decided against that. The Court considered all of the testimony offered at the trial and at that time the Court was of the opinion that she was not a fit and proper person to have custody of the child and granted custody of the child to the defendant."

If the trial court relied on the report in any substantial degree, better practice would call for a current report.

The use of reports by qualified child welfare personnel is commended. However, their use and the weight to be given to them is a matter resting within the sound discretion of the trial court.

If the reports are considered by the trial court, it should appear in the record that each party had an opportunity to examine the report and challenge its content and the scope and nature of the investigation leading to the report. Preferably the investigating welfare agent should be subject to examination and cross-examination. Further, the report should be made a part of the record, sealed if deemed advisable in the discretion of the court, so that in the event of an appeal the facts upon which the trial judge exercised his discretion in determining custody will be available for review.

In this instance it is clear from the record that the trial court had before it considerable testimony as to matters affecting custody which occurred both before and after the date of the report. We find no abuse of discretion by the trial court in refusing the request for a supplemental report in view of total evidence in the record.

Some further explanation should be made for the apparently different result approved in the instant case from that in *Wendland v. Wendland*.[2] In *Wendland,* despite moral indiscretions not unlike those involved here, the mother nevertheless was found fit by the trial court and awarded the custody (provisionally) of her four minor children. The basic distinction between the two cases is that in *Wendland* the trial court found the mother fit and awarded custody to her while in the instant case the trial court found the mother unfit and took custody from her. The facts set forth above amply support the trial court's determination that the care of her child was deficient and contains a recitation of the details of the mother's continued acts of moral indiscretion. By

[2] *Supra,* footnote 1.

contrast, in *Wendland* there was no evidence of any adverse effect on the Wendland children of the mother's indiscretions and further there was no evidence of any failure on the part of the mother to give her children completely satisfactory care.

The social worker in the instant case recommended that the child be taken from her mother. In *Wendland* the social worker recommended that the four children remain with the mother. We assume in each case the court made use of the independent investigation and recommendation of the social worker. Much is made of the fact that in this case the report was filed several months in advance of the hearing. But the record shows that the details of what transpired after the date of the report were fully explored in the record and there was nothing to indicate any definite change of circumstances which would have signaled the need for a new investigation and report.

There is no legal area in which the trial court has more responsibility or more discretion than in deciding custody matters. Repeatedly we have emphasized the trial court's wide discretion, and only a clear abuse of that discretion would justify this court in setting aside the lower court's findings.

Thus, although the trial court in this case and in *Wendland* reached different conclusions on custody, we conclude that, in view of the particular circumstances in each case, there was no abuse of discretion by either trial court.

*By the Court.*—Judgment affirmed.

HALLOWS, J. (*dissenting*). I heartily agree with the language of the majority opinion that a finding of unfitness of a young mother to have custody of her child is drastic and severe and should be supported by substantial evidence and that such a finding should not be made to bolster up granting custody to the father. Certainly, a finding of unfitness should not forever bar custody where

there has been a rehabilitation or such change in circumstances as would bring the presumption that young children are best taken care of by the mother. That truism accords with experience and the nature of human beings. I agree the finding of fitness or unfitness should be subject to circumstances existing at the time of the hearing.

I disagree with the majority because these rules have not been applied to the facts of this case. The evidence used, especially in reference to the report of the welfare department, was old and outdated and did not reflect conditions existing at the time of the hearing. Even the findings were entered some six months after the hearing, but more important, a reading of the record compels the conclusion that the appellant was found unfit and was penalized for her moral indiscretion and the child taken away from her as a penalty. I find no substantial evidence that the one proven act of moral indiscretion contributed to the neglect of the child or will in the future adversely affect its best interests. If these facts call for a finding of unfitness, the state through its social agencies would be justified in seizing custody of the second child because the appellant also must be unfit to have custody of that child. Stating a finding of unfitness is only tantamount to finding the best interest of the child lies with the other parent is an euphemism. There are not sufficient facts in the record to justify a finding that the best interest of this five-year-old girl will now be better served by granting her custody to her twenty-six-year-old father to be brought up in his parents' home.

I think the best interest of the child, which we have repeatedly said is the goal to be sought in the determination of custody, requires at least a new hearing in the interest of justice on current evidence before we affirm an order transferring the custody of the child.

I am authorized to state Mr. Justice HEFFERNAN joins in this dissent.