SOMMERS, Respondent, v. SOMMERS, Appellant.

*November 2—November 29, 1966.*

24

For the appellant there was a brief and oral argument by *John T. Pryor* of Milwaukee.

For the respondent there was a brief and oral argument by *Milton T. Murray* of Milwaukee.

HEFFERNAN, J.   There has been no appeal from the court's determination of the mother's unfitness to have custody of these children, and, therefore, no good purpose would be served in detailing her conduct which constituted the basis of the court's finding.   Suffice it to say that, at the time of the divorce, she was denied alimony in view of her association with another man. She was given custody of the two children by the judgment that was entered on April 8, 1965.   Although at the time of the hearing on divorce she stated that she was not pregnant, she has in the instant proceedings admitted that she gave birth to a child, not Warren's, on June 23, 1965, and abandoned the child on the steps of a church.   It is as the result of this incident that Warren Sommers petitioned the court to transfer the custody of the children from Joan Sommers to himself.

The respondent, Joan Sommers, does not argue that the court erred in finding her unfit to have custody of these children.   She does argue that the determination that the husband was unable to adequately care for the children and the subsequent finding of the court that custody should be vested in the Milwaukee county department of public welfare were proper and sustained by the evidence.   We have recently said in *Larson v. Larson* (1966), 30 Wis. (2d) 291, 297, 140 N. W. (2d) 230:

"A finding of unfitness on the part of one parent is tantamount to a determination that the best interest

of the child requires that its custody be placed with the other parent."

In view of the finding of unfitness of Joan Sommers, custody would, therefore, in the absence of other findings, be awarded to the father, Warren Sommers.

Sec. 247.24, Stats., gives the court power to give the care and custody of the children to one of the parties to the action. However,

". . . if the court finds either that the parents are unable to adequately care for any such child or are not fit and proper persons to have the care and custody thereof, [it] may declare such child a dependent and give the care and custody of such child to a relative . . . a county agency . . . a licensed child welfare agency, or the state department of public welfare."

As a consequence, before a trial court can deprive the natural parents of custody, there must be findings supported by the evidence sufficient to show that both natural parents are either unfit or unable to adequately care for the children.

The circuit court found "that the defendant is unable to adequately care for these children, said finding being based on the record in this matter."

This court strongly defers to the trial court's findings in custody matters. The reason for this is, of course, the uniqueness of the situation involved in each custody award and the broad understanding of the particular problem which the trial court can achieve in the course of the hearing, which can never quite be duplicated by an appellate court upon a review of the record. We have stated in *Whitman v. Whitman* (1965), 28 Wis. (2d) 50, 56, 135 N. W. (2d) 835:

" 'This court relies heavily upon the determination by the trial court.' . . . Especially important is the fact that the trial court is in a better position than this court to determine the best interests of the children, . . . and

to see and observe the parties and the way in which they conduct themselves."

We pointed out in *Wendland v. Wendland* (1965), 29 Wis. (2d) 145, 138 N. W. (2d) 185, that custody matters are highly discretionary and will not be upset in the absence of a clear abuse of discretion. Therefore, the question presented on this appeal is whether the trial judge abused his discretion in finding the defendant, Warren Sommers, unable to adequately care for his children.

The provision authorizing a court to award custody to a relative or a welfare agency if a parent is unable to adequately care for such child was added to sec. 247.24, Stats., by the 1961 legislature. Although there is a dearth of legislative history to show the precise intent of this amendment, it is probable that the legislature added this proviso in view of the restricted meaning given by this court to the phrase, "fit and proper." We pointed out in *Seelandt v. Seelandt* (1964), 24 Wis. (2d) 73, 81, 128 N. W. (2d) 66, "The statutory words 'fit and proper' have usually been interpreted in the past decisions of this court as connoting moral fitness." While this court did permit exceptions to that interpretation, it appears likely that the legislature recognized the need of denying a parent of custody under certain conditions even though that parent was not morally unfit. The appellant argues that the phrase, "unable to adequately care for," primarily refers to the father's financial ability to support the children. For this interpretation he relies on references in sec. 247.24, Stats., to ch. 48, which deals with financially disadvantaged children. However, if the legislature intended such a restrictive meaning, it would have been a simple matter to say so. Since it did not do so, we conclude that the term is broader and refers to circumstances other than those arising from moral unfitness and which could include the parent's physical, mental,

or other conditions or circumstances which would make it difficult or impossible for a morally fit person to give proper care to a child. To limit the meaning of the phrase solely to a financial inability to support a child would give rise to serious doubts of the validity of the legislation, for to so hold would give a court the right to deprive an impoverished parent of the custody of his child. Such an interpretation is certainly not in accordance with an enlightened concept of the law. In any event, it appears that the father, Warren, is regularly employed and is financially able to care for the two children; and were that the criterion, the finding of being "unable to adequately care for" could not be sustained. However, the trial judge's determination of Warren's inability to adequately care for the children was based primarily upon the testimony of Mrs. Clark, a social worker. She stated that Warren proposed taking the children to the home of his parents, where he lived. There was evidence that the home was relatively spacious and that there were adequate play facilities, but Mrs. Clark stated that the two paternal grandparents, being aged seventy-two and sixty-five, were not youthful enough to handle two small children. Mrs. Clark testified that Warren's morality was unimpeachable and that he was not in any sense unworthy, unfit, or incompetent, and gave every evidence of being fond of his children. She also agreed that the custody arrangements with the parents from a physical sense were satisfactory. The principal objection was to the age of the paternal grandparents. She also testified that the defendant was hot-tempered and did not appear to be highly motivated in initiating plans for the care of his children, but was rather dependent upon his parents, who were at an age when their long-term supervision and care of the children could not be counted on. Mrs. Clark also testified that the paternal grandmother stated that she would make it "worthwhile" to Mrs. Clark if she turned in a favorable report.

In accordance with the suggestions made in *Wendland v. Wendland, supra,* the trial judge appointed a guardian *ad litem* to represent the interests of the children and to investigate and make recommendations concerning the custody of these children. He concluded that the paternal grandparents had a suitable home but agreed with Mrs. Clark that it would be in the best interests of the children that they remain physically with their mother at the home of the maternal grandparents. Hence, it appears that the only testimony which would support a finding that Warren was not adequately able to care for his children was that he was somewhat irascible (the only evidence of this was that he did not appear to be friendly to the social worker), that he was not highly motivated in taking the initiative in making long-range plans for his children, and that his parents, though apparently healthy and respectable, were both over sixty-five years of age and could not be counted upon in being able to furnish an adequate home, for the children indefinitely.

We conclude that this evidence does not support a finding that Warren was unable to adequately care for the children. The testimony is just to the contrary. He was financially able to provide for them. There was evidence that he showed them love and affection. The paternal grandparents were in good health. They had cared for a number of foster children and, so far as the record shows, were of good character. Their home was adequate to provide the physical comforts and the proper environment for small children. The mere fact that Warren was hot-tempered, in the absence of showing that such irascibility had been or probably would be detrimental to the children, is not sufficient to deprive him of custody. Although the facts lead to the conclusion that the age of the paternal grandparents could prevent their caring for the children over a long period of time, there is no evidence to show that the care that would be given presently would be anything but proper. It is funda-

mental in the law concerning the custody of children that the court retains jurisdiction knowing full well that circumstances are likely to change and that new arrangements may be necessary. If in the future the ill health, disability, or death of one or more of the paternal grandparents necessitates a change, custody arrangements could be reviewed at that time. It cannot be said that, just because the arrangements contemplated are not the very optimum, they are therefore inadequate. We conclude, therefore, that on the basis of the record there were not sufficient facts adduced at the hearing to support the finding that Warren was unable to adequately care for the children, and hence we conclude that the order so holding constituted an abuse of discretion.

We are not unmindful of the circumstances hinted at in the record which may have influenced the trial judge's decision. We are disturbed at the statement of Mrs. Clark intimating that the paternal grandmother attempted to bribe her into giving a favorable report—that she would make it "worth [her] while."

During the course of the hearing, a witness for the husband by the name of Brown testified that he had had illicit sexual relations with Joan Louise Sommers on numerous occasions and he also testified that he had knowledge of other illicit relations that she had. Brown admitted that he had discussed his testimony with Warren Sommers and with Warren's parents prior to appearing on the stand. The trial judge, however, concluded that Brown's testimony in regard to Joan Sommers' conduct was unbelievable. We agree with the trial court's conclusion that the testimony of Brown was unbelievable, and it is not inconceivable that, in view of Brown's admitted conversations with the defendant Warren, his testimony was the result of connivance and subornation. We also note in the course of the testimony that Warren and his mother testified that Mrs. Clark, the social worker, would be able to corroborate testimony that there were marks and welts on one of the children,

allegedly as a result of a beating administered by Joan Sommers. The trial judge apparently did not accept those statements at face value, for he stated, "I'd like to have Mrs. Clark in . . . and just have her affirm or deny about the welt business." He adjourned the hearing to permit additional testimony of Mrs. Clark. However, the hearing was not resumed for that purpose.

We conclude that although the evidence does not support the conclusion that the father was "unable to adequately" care for the children, nevertheless there are numerous innuendoes in the record that if pursued further might have led to such a conclusion, and the trial judge should not be foreclosed from holding further hearings for that purpose.

On the basis of the record as it now stands, the order of the trial court must be reversed and custody awarded to Warren Sommers. In view, however, of the expressed attitude of the court and the guardian *ad litem* and of the possibility that facts known to the judge that are not of record influenced his decision, this matter is remanded for further proceedings and testimony in the matter of determining the adequacy of Warren Sommers to care for these children. Pending such determination, the order must be reversed. However, as the trial judge pointed out, these children have been "carried from pillar to post;" therefore, they shall remain in the physical custody of their maternal grandparents, under the supervision of the Milwaukee county department of public welfare, until the determination directed herein is made. We do not decide whether, should further proceedings substantiate the court's finding of the father's inability to care for the children, the children should then be awarded to the welfare department but in the physical care of the maternal grandparents.

*By the Court.*—Order reversed, and cause remanded for further proceedings in accordance with the directions contained herein.