STATE EX REL. HARRIS, and all others similarly situated, Respondents, v. LARSON, Regional Director, Division of Corrections, Department of Health & Social Services, and others, Appellants.*

*No. 562. Argued June 5, 1974.—Decided June 28, 1974.* (Also reported in 219 N. W. 2d 335.)

* Motion for rehearing denied, without costs, on September 4, 1974.

522

524

For the appellants Richard Larson and John F. Erickson the cause was argued by *Charles R. Larsen,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the appellants Hon. William A. Jennaro, Hon. Victor Manian and Arthur J. Silverman there was a brief by *Robert P. Russell,* Milwaukee county corporation counsel, and *Karl Mario Dunst,* Milwaukee county assistant corporation counsel, and oral argument by *Mr. Dunst.*

For the respondents there was a brief by *Craig E. Miller,* chief staff counsel, Corrections Legal Services Program, attorney, and *James D. Rudd,* Legal Aid Society of Milwaukee, of counsel, and oral argument by *Mr. Miller.*

HEFFERNAN, J.   Initially, respondents claim that Harris does not share a common or general interest with other children he claims to be members of his class. They argue that there are at least four groups of children at the detention home whose status is distinct and whose problems are different.   They point out that these four groups consist of delinquents, children in need of supervision, dependent children, and neglected children.

While it is clear that all do not share all interests, it is equally clear that all share a common interest.   Each of these children have had their status adjudicated, and each one of them has been held in the detention home awaiting placement.  It is only this situation that constitutes the subject matter of this action.  It is not the differences among members of the class that concern us. Rather, we are concerned with the common situation which each of them shares.  They are a class too numerous to practicably bring before the court individually.

The members of the alleged class satisfy the provisions of sec. 260.12, Stats.:

"260.12 **Parties united in interest to be joined; class actions; alternative joinder.** Of the parties to the action those who are united in interest must be joined as plaintiffs or defendants; but if the consent of any one who should be joined as plaintiff cannot be obtained he may be made a defendant, the reason thereof being stated in the complaint; and when the question is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of the whole. And when more than one person makes a separate claim for damage against the same person or persons based upon the same alleged tortious conduct, they may unite in prosecuting their claims in one action."

Our resolution of the problem is controlled by *Pipkorn v. Brown Deer* (1960), 9 Wis. 2d 571, 576, 101 N. W. 2d 623, wherein this court said:

". . . where the question involved is one of common or general interest, a representative suit may be brought by one for the benefit of all who have such a common or general interest . . . ."

The trial judge correctly determined that this was an appropriate class action and that Harris was representative of the class.

The respondents impliedly misstate the question when they assert that "confinement of members of the class in the Milwaukee county detention home is not illegal as a matter of statutory law." The implication of this question is that it is the obligation of the petitioners to show some positive illegality in the confinement. Rather, we conclude that all that must be shown by the petitioners is a lack of statutory authority to order incarceration at the detention home after there has been an adjudication of status.

The question in regard to the judges of the children's court is whether they have statutory authority to order the detention of a child pending his placement. In addi-

tion, we are faced with the question of whether the department of public welfare or the department of health and social services can place a child in the detention home pending permanent placement.

Ch. 48, Stats., the Children's Code, is a comprehensive legislative plan for dealing with children in need of supervision and neglected, dependent, and delinquent children. It is a chapter of carefully spelled out definitions and enumerated powers. Court jurisdiction is spelled out in great detail in sec. 48.12 ff. Procedures are carefully detailed. The circumstances under which a child may be detained when first taken into custody are enumerated in sec. 48.28. Eventual dispositions are enumerated, and legislative guidelines are carefully drawn to circumscribe judicial and administrative action.

The chapter reflects the legislature's desire to specifically define the authority of appropriate officers. Where there is evidence of such enumeration, it is in accordance with accepted principles of statutory construction to apply the maxim, *expressio unius est exclusio alterius;* in short, if the legislature did not specifically confer a power, it is evidence of legislative intent not to permit the exercise of the power.

Under this analysis, it is apparent that there is no authority for the children's court judges to order a child detained in the detention home after his status has been adjudicated and he is awaiting placement. Specific provision is made in secs. 48.28, 48.29, 48.30, and 48.31, Stats., for detention prior to adjudication. Secs. 48.33, 48.34, 48.345, and 48.35 enumerate alternatives available to the judge upon adjudication. None of these alternatives provide for incarceration in the detention home.

The enumeration of the specific alternatives is evidence of legislative intent that any alternative not specifically authorized is to be excluded. The legislature excluded postadjudication detention in this institution as an acceptable alternative.

It is also true that there is no statutory authority for the Milwaukee county department of public welfare to temporarily place a child in its custody in the detention home while permanent placement is sought.

Sec. 48.57, Stats., lists the powers and duties of the department of public welfare in its custody of the child and authorizes the department:

"(1) . . . (c) To provide appropriate care and training for children in its legal custody, including placing those children in licensed foster homes [governed by secs. 48.62, 48.63, and 48.64, Stats.] in this state or contracting for care of them by licensed child welfare agencies [governed by secs. 48.60 and 48.61]."

The department of public welfare is also authorized to place the child in the county children's home and to place children for adoption. (Sec. 48.57 (1) (e), Stats.) Sec. 48.58 lists the functions of the county children's home, and one of them is to "provide temporary shelter care for dependent or neglected children." (Sec. 48.58 (1) (c).) Nowhere in any of sec. 48.57 or sec. 48.58 is the department of public welfare authorized to place children in the detention home temporarily while permanent placement is sought. It does not have that authority.

Nor does the department of health and social services and its divisions of corrections and family services have authorization to place children temporarily in the detention home after the child's status has been adjudicated and his custody has been transferred to the department.

For authority to place children in the detention home, the department relies on sec. 48.52, Stats., which lists seven types of facilities in which children may be placed. Sec. 48.52 (2) (a) and (b) provides that placement may be in other facilities. The department contends that the detention home is one of such "other facilities," and that it can place a child in the detention home.

The detention home is not, under the statutory scheme of things, one of those "other facilities." In accordance with sec. 48.30 (1), Stats., a child prior to adjudication may be detained in a detention home, a licensed foster home, a place of detention maintained by a licensed child welfare agency, or a jail if he is separated from adults. Under secs. 48.48 (4) and 48.52 (1), the department may place the child in a licensed foster home or a licensed child welfare agency after adjudication and accepting legal custody of the child. Thus, two of the four possible locations of preadjudication detention have been enumerated as also appropriate for postadjudication placement. Had the legislature felt that detention homes were also permissible for such placement, it would have listed them in secs. 48.48 or 48.52 with foster homes and child welfare agencies. The fact the detention homes were not included is evidence that the legislature did not intend them to be used for postadjudicative care or custodial holding of the child.

Moreover, it should be noted that the Children's Code follows a logical chronology from original custody to final disposition. It is only in the section concerned with taking a child into custody initially that confinement in a detention home is authorized. Secs. 48.29, 48.30, and 48.31, Stats., specifically authorize such confinement, but only prior to court adjudication. Nowhere else is there specific reference to confinement in a detention home. The very structure of the Children's Code evidences the legislative intent that a child not be placed in a detention home while awaiting placement after adjudication.

No statute authorizes the children's court judges to place Harris and others of his class in the detention home until such time as they can be placed on a permanent basis. It is equally clear that the agencies and their employees who are respondents herein are without such authority.

The trial judge also held that such confinement without due process would be unconstitutional even if statu-

tory authority existed. While that ruling may well be correct, that issue is not before us. It was neither raised nor argued in the trial court. It is unnecessary for the disposition of this case, and we decline to consider whether a child could be held indefinitely at the detention home awaiting placement.

The trial judge recognized the practical problem presented by his ruling. He recognized that placement might not be available immediately after adjudication. For no articulated reason, he determined that a child could be held in the detention home for a period not to exceed forty-eight hours after adjudication.

Former children's court Judge HOWARD G. BROWN stated that, while he felt there was no statutory authority to hold children in a detention home after adjudication, it was not unreasonable for them to be held until they could be picked up for permanent placement. He suggested twenty-four hours as a reasonable time. George Frohmader, director of the Milwaukee county children's court center, was of the opinion children could not be held in detention after adjudication beyond twenty-four hours, which is the time period that a child can be held pending a hearing on further detention under sec. 48.29 (2), Stats.

We conclude that a child cannot be held in the detention home for a period in excess of five days. Any detention beyond that time is presumptively unreasonable. It, therefore, becomes the positive duty of the children's court judges to direct that no child shall be held for a longer period. In the event placement is impossible within that period, an additional hearing, which may be informal in nature, must be held and an order entered which details the circumstances that require detention beyond the original five-day period. No period of detention shall continue for more than five days without express judicial authority. Nor may any period of con-

finement be extended without an additional hearing and order.

We do not contend that five days is an appropriate period of confinement; rather, it impresses us as being at the outermost bounds of reasonableness. However, we recognize the practicalities of the situation. There is no evidence of any conscious or intentional oppression of these children. Rather, their illegal confinement appears to have been necessitated by the lack of appropriate placement facilities. This, however, does not excuse an abuse of authority not warranted by the statutes. If there is no appropriate place to house these children pending placement, it is the duty of Milwaukee county or of the state to provide such facilities.

However, until appropriate action can reasonably be taken by the proper governmental unit, the detention home may be used for temporary housing pending placement.

We do not, however, sanction the use of the detention home for this purpose, except for such period of time as may be necessary to locate or erect appropriate facilities.

*By the Court.*—The writ of mandamus of January 2, 1974, and the writ of prohibition of January 2, 1974, limiting temporary detention to forty-eight hours, are modified consistent with this opinion and, as modified, are affirmed; the order of January 2, 1974, making the writ of prohibition absolute and the writ of mandamus peremptory, is affirmed.

HALLOWS, C. J. *(concurring).* I would affirm because I think five days is too long and the majority has not given any logical basis in fact why five days is a reasonable period any more than three days or ten days or forty-eight hours.