IN RE the MARRIAGE OF:
Janette G. GROH, Petitioner-Appellant-Petitioner,

v.

Edward G. GROH, Respondent.

Supreme Court

*No. 81–1602. Argued October 4, 1982.—Decided January 5, 1983.*

(Also reported in 327 N.W.2d 655.)

For the appellant-petitioner there were briefs and oral argument by *Carol W. Medaris,* Legal Action of Wisconsin, Inc., Madison.

For the respondent there was a brief by *Thea M. Host-Keane* and *Harlow J. Hellstrom, Ltd.,* Milwaukee, and oral argument by *Mr. Hellstrom.*

For the minor children there was a brief and oral argument by *Henry A. Tessmer,* Milwaukee, guardian *ad litem.*

DAY, J. This is a review of an unpublished per curiam decision of the court of appeals filed on May 18, 1982, which affirmed an order of the Circuit Court for Milwaukee County, JOHN F. FOLEY, Judge, directing that custody of the minor children of petitioner, Janette Groh, and respondent, Edward Groh, be continued with Janette

Groh on the condition that she and the children move from Rhinelander to a residence within fifty miles of Milwaukee by September 1, 1981. If Janette Groh, the mother, failed to move, the court ordered that the custody of the children be transferred to Edward Groh, the father. This court ordered a stay of the trial court order pending review of the decision of the court of appeals.

There are two issues on this review. First, did the court have the authority to order the mother to change her residence within the state as a condition of retaining custody? Second, did the trial court abuse its discretion in ordering that custody of the children be taken from the mother and be transferred to the father if she failed to move to Milwaukee?

We conclude that the trial court lacked authority to order the mother to relocate to Milwaukee as a condition of retaining custody. We further conclude the trial court abused its discretion in ordering that custody be transferred to the father should the mother fail to move with the children to the Milwaukee area. Accordingly, we reverse the decision of the court of appeals.

Edward and Janette Groh were divorced on December 7, 1978. At the time the family lived in Milwaukee. There were four children of the marriage: Jodi, born November 26, 1970; Kelly, born December 11, 1972; Edward, (Casey) born March 22, 1974, and Christine, born February 8, 1977. At the time of the divorce, custody was awarded to the mother by stipulation.

In August, 1979, Janette Groh moved with the children to Rhinelander. Edward Groh was opposed to the move. Prior to the move, Edward Groh visited with the children approximately two weekends per month and one or two evenings a week. Following the move, he would visit the children one or two weekends a month and take them over the Christmas and Easter holidays, and for a seven-to-eight-week period during the summer. The weekend

visits take place at property his parents own about forty miles from Rhinelander. It is approximately 235 miles from Milwaukee to Rhinelander.

Nine months after the move, Edward Groh began an action to get custody of the children. A hearing was held before a family court commissioner and a trial *de novo* took place before the circuit court. At the trial, Janette Groh stated she moved to Rhinelander because she had visited the area since she was a child and she and her former husband had many relatives there. She also said she believed that Rhinelander would provide a better environment for her and the children and that she could live more cheaply there. Janette Groh helped support the family by working part-time as a waitress. She also received $400 per month support payments from Edward Groh and an Aid to Families with Dependent Children grant.

During the trial, the judge found that the Rhinelander school system had "excellent" facilities for the children and that their special needs were identified and met. The children participated in a support group at school for children from divorced families.

Both a psychologist and family conciliation worker testified that custody should be retained by the mother. They did, however, emphasize the importance of the children continuing the close relationship they had with their father. The guardian *ad litem,* on the other hand, recommended that custody remain with the mother only on the condition that she return to Milwaukee. The family conciliation worker testified that the children told her they wished to remain with their mother and continue to live in Rhinelander.

There was testimony that the children enjoyed a very close relationship with both parents. The psychologist testified that to a reasonable degree of professional certainty that both parents were appropriate persons to

have custody of the children. The court found that both parents were "fully competent" to have custody of the children. The court reviewed the factors set out in sec. 767.24(2), Stats. 1979–80[1] and determined that "the scale has not weighed one way or the other" in favor of either parent having custody of the children. Nevertheless, the court decided the mother could retain custody of the children only if she and the children moved to within fifty miles of Milwaukee.

The court based its decision on three factors: first, the distance that Edward Groh had to travel to see the children; second, the fact that the mother was only marginally employed and was receiving public assistance in Rhinelander; and third, the fact that Janette Groh had not remarried and had no close "romantic attachments." The court summarized these latter two factors by stating

[1] Section 767.24(2) reads:

"767.24  **Child custody.** . . . (2)  In making a custody determination, the court shall consider all facts in the best interest of the child and shall not prefer one potential custodian over the other on the basis of the sex of the custodian. The court shall consider reports of appropriate professionals where admitted into evidence when custody is contested. The court shall consider the following factors in making its determination:

"(a)  The wishes of the child's parent or parents as to custody;

"(am)  The wishes of the child as to his or her custody;

"(b)  The interaction and interrelationship of the child with his or her parent or parents, siblings, and any other person who may significantly affect the child's best interest;

"(c)  The child's adjustment to the home, school, religion and community;

"(d)  The mental and physical health of the parties, the minor children and other persons living in a proposed custodial household;

"(e)  The availability of public or private child care services; and

"(f)  Such other factors as the court may in each individual case determine to be relevant."

that ". . . everything that [Janette's] doing in Rhinelander can be done very easily in the City of Milwaukee."

In order for the trial court order to be enforceable, the court must have subject matter jurisdiction over the action, personal jurisdiction over the parties and the power to make the order. We conclude that while the trial court had personal jurisdiction over the parties and subject matter jurisdiction over the custody issue, it lacked authority or power to order the mother to move because of legislative action restricting the court's power.

In *Dovi v. Dovi,* 245 Wis. 50, 55, 13 N.W.2d 585 (1944), this court held that a circuit court, as a court of equity, had equitable jurisdiction arising from the Wisconsin Constitution to decide child custody in divorce actions even though no divorce was granted. That holding was reiterated in *Subrt v. Subrt,* 275 Wis. 628, 632, 83 N.W.2d 122 (1957). However, the court in *Dovi* recognized that while legislation was not necessary to confer jurisdiction on the trial court in custody matters, the legislature could regulate ". . . the exercise of the equity jurisdiction of the court." 245 Wis. at 55.

The problem in *Dovi* was that a provision in the statutes that had previously been interpreted by the court as authorizing the court to make a custody award in a divorce action where no divorce was granted was repealed by the legislature. It was then argued that a trial court had no jurisdiction to make a custody award in a divorce action where no divorce was granted.

Recognizing that jurisdiction in divorce is entirely dependent on legislative authority, in *Dovi,* this court said:

"The plaintiff cites to our attention a number of cases to the effect that in Wisconsin it has long been held that the courts of this state have no common-law jurisdiction over the subject of divorce and that their au-

thority is confined altogether to such express and incidental powers as are conferred by statute (citing cases). *Such is undoubtedly the law.*" 245 Wis. at 53. (Emphasis added.) [2]

Similarly, in *Subrt*, the statute in effect at the time did not address the question of awarding custody of minor children in an action for divorce where a divorce was not granted. In both cases, the trial courts were forced to fashion equitable remedies to protect the interests of the children involved.

However, where the legislature has set forth a plan or scheme as to the manner and limitation of the court's exercise of its jurisdiction, that expression of the legislative will must be carried out and power limitations adhered to.

The authority of the legislature to limit a court's power in awarding custody was recognized by this court in *Hamachek v. Hamachek,* 270 Wis. 194, 198–199, 70 N.W. 2d 595 (1955), wherein this court said:

"Courts have no power in awarding custody of minor children other than that provided by statute. The only provision in the statutes for awarding custody of minor children to an institution or to a person other than the parents is that which is applicable to cases where both the mother and father are found unfit to have custody."

This paragraph was quoted with approval in *Larson v. Larson,* 30 Wis. 2d 291, 297, 140 N.W.2d 230 (1966).

Under common law the father was entitled to the custody of the children unless a valid court decree declared

[2] For more recent authority, *see, Siemering v. Siemering,* 95 Wis. 2d 111, 113, 288 N.W.2d 881 (Ct. App. 1979), citing *Zlindra v. Zlindra,* 252 Wis. 606, 611, 32 N.W.2d 656 (1948), for the proposition that "Jurisdiction of divorce actions is purely statutory."

otherwise. Wisconsin changed the rule by statute and provided that "Women shall have the same rights and privileges under the law as men in the . . . care and custody of children . . ." (see discussion of this change in the law in *Dovi v. Dovi*, 245 Wis. at 56).

The rule then became that mothers were favored over fathers in the award of custody. As this court said in 1966 in *Larson v. Larson*, 30 Wis. 2d at 299: "The rule that the law favors the mother as to the custody of the minor child is a strong and fundamentally a natural consideration in determining custody, . . ."

But legislative perceptions change and in 1977 the legislature enacted section 767.24 (2), Stats., that eliminated the maternal preference in custody determinations by providing: "In making custody determination, the court . . . shall not prefer one potential custodian over another on the basis of the sex of the custodian. . . ."

Recognizing that the trial court had jurisdiction over custody in this case, the question becomes one of whether the legislature has acted in such a manner as to preclude the court from ordering Janette Groh to move the children from Rhinelander to Milwaukee or lose custody. We conclude the legislature has circumscribed the trial court's power in dictating where the custodial parent may reside within the state.

The Divorce Reform Act[3] was a comprehensive reform of divorce law in this state. The visitation provisions[4] were completely rewritten and expanded to provide clearly enumerated visitation rights and to carefully delineate a trial court's powers to establish and enforce such rights. Section 767.245 (1), Stats. 1979–80, guarantees a noncustodial parent reasonable visitation rights. Subsection (6) of that section requires that a child's cus-

---

[3] Chapter 105, Laws of 1977.
[4] Section 767.245, Stats. 1979–80.

todian obtain written permission of the noncustodial parent or permission of the court in order to establish legal residence *outside the state.*

This subsection, however, cannot be read to give the court the power to order that a custodial parent live in a designated part of the state or lose custody of the children. Application of the doctrine of *expressio unius est exclusio alterius*[5] to sec. 767.245, Stats., leads to the conclusion that the legislature's failure to specifically confer the power is evidence of legislative intent not to permit the exercise of the power.[6] Application of this doctrine to this section is particularly appropriate because this statute is part of a comprehensive legislative plan addressing actions affecting the family. In considering the effect that the relocation of a custodial parent may have upon the visitation rights of a noncustodial parent, the legislature could have required that the custodial parents receive court permission for moves within the state. It did not establish such a requirement. The power that the legislature gave was one over out-of-state moves. The court has no power to order where a custodial parent should live within the state.

The father contends that the trial court had authority to issue its order by virtue of sec. 767.24(1)(d), Stats. 1979–80.[7] That section gives the custodial parent the rights and responsibilities set out in sec. 48.02(12). In sec. 48.02(12), legal custody is made ". . . subject to . . . the provisions of any court order." The father claims this means legal custody is subject to the pro-

---

[5] *State ex rel. Harris v. Larson,* 64 Wis. 2d 521, 527, 219 N.W. 2d 335 (1974).

[6] *Id.* at 527.

[7] Section 767.24(1)(d) reads in part:

"Child custody. . . . (1)(d) The award of legal custody of a child under this section or s. 767.23(1)(a) shall give to the custodian the rights and responsibilities specified in s. 48.02(12) . . ."

visions of any court order as long as the order is made "in the best interests of the children." We cannot accept this proposition.

If the trial court had the power to make any order it pleased so long as the order could somehow be justified by recitation of the rubric "in the best interests of the children," the limits the legislature placed on the court's exercise of power in custody matters would be meaningless. Legal custody is subject to the provisions of court orders as sec. 48.02 (12), Stats., states. However, it is subject only to orders that the court is empowered to make. Since the court lacked the power to order the mother to move or lose custody, the order is a nullity. The legislature did not create a new power in courts in sec. 48.02 (12), it merely recognized the method by which directives are given and enforced.

We conclude on the facts in this record that the court lacked the power to order Janette Groh to move from Rhinelander to Milwaukee on pain of forfeiting custody of her children.

The second issue on review is whether the trial court abused its discretion in ordering custody transferred to Edward Groh if Janette Groh failed to move the children to Milwaukee.

A trial judge's authority to remove custody from a custodial parent is governed by sec. 767.32 (2), Stats. 1979–80, which reads in part:

"767.32 **Revision of judgment.** . . . (2) . . . Any modification of a custody order which removes a child from the care of a parent having custody of the child shall be based on a finding that such removal is necessary to the child's best interest as shown by substantial evidence supporting a change in custody under s. 767.24 (2)."[8]

---

[8] Section 767.32 (2) erroneously referred to sec. 767.24 (1m), Stats., as setting out the factors to be considered in determining

Edward Groh argues that this statute does not apply to cases where the award of custody was made pursuant to a stipulation. He claims that the Divorce Reform Act[9] could not reasonably be construed as overruling common law in this state to the effect that an award of custody made pursuant to a stipulation of the parties is not *res judicata* on the issues surrounding a custody determination.[10]

We agree with Mr. Groh on this point. An award of custody based upon a stipulation of the parties involved does not close down future inquiry into the fitness of the parties. Where a challenge to a party's custody occurs following a custody awarded by stipulation, evidence on the party's pre- and post-custody conduct may be adduced. However, the fact that a stipulated custody award is not *res judicata* on matters surrounding a dispute over custody does not mean that the legislature cannot place on the noncustodial parent the burden of showing by substantial evidence that a change in custody is in the best interest of the child.

The language of the statute is clear. Any modification of a custody order in which custody is transferred from the custodial parent must be based on a finding supported by substantial evidence under sec. 767.24(2), Stats., that the removal is in the child's best interest. In order to

where a change in custody would be in the best interests of the child. The correct reference should have been to sec. 767.24(2). This error was corrected by Chapter 314, sec. 146, Laws of 1981. We will refer to this section as 767.24(2).

[9] *See* fn. 5, *supra.*

[10] *King v. King,* 25 Wis. 2d 550, 553, 131 N.W.2d 357 (1964); *Gochenaur v. Gochenaur,* 45 Wis. 2d 8, 14–15, 172 N.W.2d 6 (1969); *Freye v. Freye,* 56 Wis. 2d 193, 196, 201 N.W.2d 504 (1972); *Marotz v. Marotz,* 80 Wis. 2d 477, 483–484, 259 N.W.2d 524 (1977); *Haugen v. Haugen,* 82 Wis. 2d 411, 414, 262 N.W.2d 769 (1978).

transfer custody to the father here, such determination must be based on substantial evidence.

In reviewing custody determinations by the trial court, great weight is given to the trial court's decision. As this court stated in *Allen v. Allen,* 78 Wis. 2d 263, 271, 254 N.W.2d 244 (1977), ". . . the award will not be upset unless this court is convinced that it is against the great weight and clear preponderance of the evidence, or unless it represents a clear abuse of discretion, or unless the trial court has applied an erroneous rule of law."

Here, it is the order of the trial court that is being challenged. Thus, it is the second test—whether the order represents a clear abuse of discretion—which must be applied.[11] As this court stated in *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d 381, 311 N.W.2d 624 (1981), "[t]o find an abuse of discretion an appellate court must find either that discretion was not exercised or that there was no reasonable basis for the trial court's decision." *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d at 395. In this case, the question before the court is whether there was a reasonable basis for the trial court's order.

For a reasonable basis to exist to support a modification of a custody order transferring custody from a custodial parent, sec. 767.32(2), Stats., requires that it be based on a finding supported by substantial evidence that such removal is in the best interests of the children. We conclude that there was no basis in this record for drawing such a conclusion.

Section 767.32(2), Stats., requires that a court consider the factors set out in sec. 767.24(2).[12] After con-

[11] *See, State v. Marshall & Ilsley Bank,* 234 Wis. 375, 379, 291 N.W. 361 (1940), in which the court writes:

"Discretionary orders of a trial court cannot be disturbed except for abuse of discretion."

[12] *See* fn. 1 for the language of this section. The factor listed in sec. 767.24(2)(am) was not required to be considered by the

sidering these factors, the trial court concluded that "the scale has not weighed one way or the other" in favor of either parent having custody over the other. The court did consider additional factors, such as the distance the father had to travel to see the children, the employment status of the mother and her "romantic attachments." However, these latter considerations did not go to the question of whether it would be in the best interests of the children to have custody transferred to the father. Rather, they went to the question of whether the mother could and should be ordered to move to Milwaukee for Mr. Groh's convenience.[13] In terms of whether custody should lie with one parent or the other, the court found both parents "fully competent" to have custody of the children.

Where the trial court has found the custodial parent "fully competent" to have custody of her children and has stated that, after reviewing the factors set out in sec. 767.24(2), Stats., both parents are "fit and proper"

trial court because the consideration did not become mandatory until August 1, 1980, approximately three months after the commencement of this action. Section 767.24(2)(am) reads:

"The wishes of the child as to his or her custody."

The children expressed the desire to remain with their mother and live in Rhinelander.

[13] If the mother moved with the children to Milwaukee and the father later took a job in La Crosse, should the mother then be forced to move to La Crosse for the convenience of the father if she only had a part-time job "and no romantic attachments"? We think not. If the father had custody in another city and the mother got a job that paid more than he made, should the father be required to quit his job and move to the place where she lives in order to retain custody? Again, we think not. To pose these hypothetical situations demonstrates the wisdom of the legislative scheme that only requires a noncustodial parent's permission or court authority when the move is out-of-state. That is true whether its a short distance across the border or a proposed move to the most distant point in the United States.

to have custody and where the physical and social environment surrounding the children was found to be very good,[14] we cannot say that there is a reasonable basis for finding that substantial evidence exists to transfer custody from the mother to the father. The trial judge himself viewed the evidence as being equal. There is not substantial evidence which demonstrates that it would be in the children's best interests to be in the custody of their father instead of their mother.

Because there was no substantial evidence in the record supporting a transfer of custody, there was no reasonable basis for the order and the issuance of such an order therefore constituted an abuse of judicial discretion.

*By the Court.*—The decision of the court of appeals affirming the order of the trial court is reversed.

WILLIAM G. CALLOW, J. *(dissenting).* I dissent because I believe the majority has impermissibly limited the authority of the trial court. The majority declares that "the legislature has circumscribed the trial court's power in dictating where the custodial parent may reside within the state." *Supra,* at 124. Unlike the majority, I do not believe that the doctrine of *expressio unius est exclusio alterius* applies to sec. 767.245(6), Stats.

In *Dovi v. Dovi,* 245 Wis 50, 13 N.W.2d 585 (1944),

---

[14] The record shows that the children liked living in Rhinelander and wished to remain there. The trial judge took note of the fact that Rhinelander had "good facilities with regard to the children."

A guidance counselor testified that Jodi and Kelly Groh participated in a divorce support group at school. The children had a significant number of friends, were doing well academically and were considered to have adjusted well to living in Rhinelander. The older children participated in a religious instruction program.

this court considered the power of the trial court in custody matters. We concluded, after an extensive review of case law in other jurisdictions, that a court of equity has jurisdiction of personal rights, including those of infants, and we held that such jurisdiction may be exercised in divorce actions as well as in other actions of an equitable nature. We further found that the court receives its jurisdiction from the constitution; hence the legislature cannot take it away. *Id.* at 55. Furthermore, in *Wendland v. Wendland,* 29 Wis. 2d 145, 138 N.W.2d 185 (1965), we stated that the trial court has wide discretion in determining custody matters. I do not believe the legislature in enacting sec. 767.245(6), Stats., intended to limit the authority of the court to regulate the in-state moves of custodial parents. Rather, the legislature was simply stating its concern for the child-parent relationship by establishing a restriction on the distance a custodial parent can move without permission. The great distances which may separate the noncustodial parent from the children and the ability of the court to supervise the parties and the children are significant considerations. Although the legislature chose the state boundary lines as limitations, an in-state move can present similar concerns.

I do not believe the legislature attempted to deprive courts of the longstanding power to do what is necessary to protect the best interests of the children. Because I believe accessibility of children to a parent is the legislature's concern in enacting sec. 767.245(6), Stats., I cannot accept the majority's conclusion that the legislature intended to deny court supervision in those cases where an in-state move would frustrate visitation. In-state moves often place a greater distance barrier between parents and children than do out-of-state moves. Thus, limiting the court's power to regulate such moves by applying the doctrine of *expressio unius est exclusio*

*alterius* to sec. 767.245 (6) may produce an absurd result. In interpreting statutes we are to avoid absurd results. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 766, 300 N.W.2d 63 (1981).

Nor do I believe that the trial court abused its discretion. This is simply a custody order. The order followed a petition to change custody based on an allegation by Edward Groh that Janette Groh was not fulfilling the religious, moral, and physical needs of the children and that her removal of the children from Milwaukee to Rhinelander made it difficult for him to provide the guidance which he believed they needed.

The trial court's findings reflect concern for the children's needs. The custody order implements the court's finding that, while both parents were fit for custody, the best interests of the children would be served by having them reside in the Milwaukee area. Because I believe that, based on the record in this case, the trial court could have transferred custody to Edward, I find no merit to Janette's argument that conditioning custody upon her move to the Milwaukee area is unreasonable. She continues as a custodial parent as long as she is willing to do what is in the best interests of the children. If she chooses not to accommodate those interests by moving to Milwaukee, Edward will gain custody. The trial court wisely attempted to accommodate the interests of children and parents. It avoided the trauma of changing custody by permitting Janette to make a choice which would enable her to prevail in the custody matter. The court's decision was compatible with the recommendations of the guardian ad litem and the other experts. For these reasons, I conclude that the trial court did not abuse its discretion.

We have long recognized that the trial court is in the best position to evaluate the conflicting interests of the parties and the children. *Whitman v. Whitman*, 28 Wis.

2d 50, 135 N.W.2d 835 (1965). Therefore, this court strongly defers to the trial court's findings in custody matters. *Sommers v. Sommers*, 33 Wis. 2d 22, 146 N.W. 2d 428 (1966). The trial court should be accorded such deference in this case.

I am authorized to state that Justice DONALD W. STEIN-METZ and Justice LOUIS J. CECI join in this dissenting opinion.