IN RE the MARRIAGE OF: Judith M. STEINKE, Petitioner-Appellant-Petitioner,

v.

Robert Allen STEINKE, Respondent.†

Supreme Court

*No. 84–1337. Argued September 5, 1985.—Decided November 26, 1985.*

(Also reported in 376 N.W.2d 839.)

† Motion for reconsideration pending. This motion was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the petitioner-appellant-petitioner there was a brief by *Joseph G. Doherty* and *Bunk, Doherty & Griffin, S.C.,* West Bend, and oral argument by *Joseph G. Doherty.*

For the respondent there was a brief by *T. Christopher Kelly,* and *Dewa, Beaudin & Kelly, S.C.,* Madison, and oral argument by *T. Christopher Kelly.*

LOUIS J. CECI, J. The petitioner, Judith Steinke, appeals from an unpublished order of the court of appeals, dated January 9, 1985, summarily affirming both the property division and maintenance award in a divorce judgment of the circuit court for Washington county, J. Tom Merriam, circuit judge. We reverse the court of appeals.

The parties present two issues for our review:

(1) Did the circuit court abuse its discretion in failing to consider Robert Steinke's employment pension as an asset of the marital estate to be divided between the parties; and

(2) Did the circuit court abuse its discretion in its award of maintenance to Judith Steinke of $150 per month for one year?

With regard to the first issue, we hold that the circuit court abused its discretion in not treating Robert Steinke's pension as an asset of the marriage and, therefore, in not including that asset in its division of the marital estate. Second, we find that the trial court abused its discretion in not explicitly setting forth its rational mental process in granting the maintenance award. In addition, a substantial error in the property division necessitates a reconsideration of the maintenance award.

This divorce proceeding commenced on April 30, 1982. Robert and Judith Steinke had been married for twenty-four years at the time of the divorce decree on December 7, 1983. Both parties were then fifty-six years old. Their two children were adults.

The husband had been employed as a Miller Brewing Company (Miller) worker for thirty-five years prior to and during the course of the marriage. On September 1, 1983, he made an irrevocable election to retire early from Miller and thereby to begin receiving monthly payments from his pension plan.

Under the terms of the pension plan, Robert Steinke began receiving monthly payments of $945. (He also is receiving and will receive $900 per month for five years as an incentive for selecting early retirement, but Mrs. Steinke makes no claim that this incentive amount is an asset of the marriage subject to division.) Because Robert will be eligible for social security in October of 1989, his payments through the pension plan will be reduced to $495 per month; the payments will increase to $622 per month when Mr. Steinke reaches age 65. The record implies, however, that his pension benefits plus his social security benefits will always approximate the $945 per month which he is presently receiving.

Mrs. Steinke's employment history has been more varied than Mr. Steinke's. During the early years of the marriage, she was a homemaker and took care of their children (1960–67). Later, she occasionally served as a substitute Spanish teacher (1967–72). Mrs. Steinke also performed some factory work (1974–75) and then some clerical duties for an employment agency (1975–76). At the time of the divorce proceedings, she was living in West Germany and was employed selling insurance and mutual funds to American servicemen stationed in Europe. The record indicates that Mrs. Steinke's earnings at this latest job have been minimal and that her prospects of significant earnings there are not good. Mrs. Steinke has a B.A. degree in education and is a securities dealer, licensed through the National Association of Securities Dealers.

Various documents within the record reveal that for the four-year period from 1979 through 1982, the husband earned approximately $156,000. The wife in the same period earned about $44,000, including at least $6,000 of which was received as unemployment compensation. In his last full year of employment, 1982, Mr. Steinke earned $34,035 from his job. The most that Mrs.

Steinke ever earned in any of her employment positions was $15,355 in 1979. The trial court's findings of fact indicate that in 1983, she earned only $3,300.

The parties orally stipulated during the trial to the division of all assets of the marital estate, with the exception of Mr. Steinke's pension plan. The marital estate included a homestead worth approximately $140,000, additional realty, securities and tax shelters, insurance policies, two cars, a boat, and a horse. The stipulation effected a virtually equal division of the estate. Thus, the only issues submitted to the trial court for determination were the division of the husband's pension plan and the award of maintenance.

The trial court, in a three-paragraph decision,[1] determined that the pension plan should be excluded from the division of the estate and instead be considered as income in determining the issue of maintenance. The court awarded Mrs. Steinke maintenance of $150 per

---

[1] The memorandum decision reads as follows:

"The parties in this action had stipulated to a property division. The Court was left with certain issues to decide; first being the evaluation of the husband's retirement plan, and second with respect to the possible division of the retirement plan, and the third, what the husband should pay for maintenance, if any.

"In this case the Respondent husband is retired and is drawing on the pension plan and on this particular fact situation, the interest in the pension plan should be excluded from consideration in the division of the estate and considered as income in the awarding of maintenance.

"After reviewing the evidence and testimony submitted in this case, it would appear that at this time there is a need on the part of Mrs. Steinke for some financial assistance and that Mr. Steinke is able to and should pay the sum of $150.00 per month starting with the month of January, 1984, payable on the 15th day of each month. Such payments to continue through the month of December, 1984, at which time such payments are to terminate, but the matter of maintenance shall continue to be held open with respect to both parties."

month for a period of one year; at the end of the one-year period the matter of maintenance would be held open with respect to both parties.

The court of appeals summarily affirmed the trial court. It stated, based on its reading of *Leighton v. Leighton,* 81 Wis. 2d 620, 635, 261 N.W.2d 457 (1978), that a trial court, in its discretion, may exclude an interest in a pension fund from the property division if the pension fund is considered as income in awarding maintenance. The court of appeals also held that the trial court did not abuse its discretion in setting the maintenance award, although "at first glance the trial court's award appears unduly low in light of the potential value of Robert's pension benefits . . . ."

## DIVISION OF PROPERTY

We first reiterate that marriage is akin to an economic partnership between spouses. *See, e.g., Lacey v. Lacey,* 45 Wis. 2d 378, 382, 173 N.W.2d 142 (1970). "The division of the property of the divorced parties rests upon the concept of marriage as a shared enterprise or joint undertaking." *Id.* A logical expansion of this partnership concept—a presumption of equal division of the marital property—has been incorporated at sec. 767.255, Stats. 1981–82.[2]

---

[2] Section 767.255, Stats. 1981–82, reads as follows:

"767.255 **Property division.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(h), the court shall divide the property of the parties and divest and transfer the title of any such property accordingly. A certified copy of the portion of the judgment which affects title to real estate shall be recorded in the office of the register of deeds of the county in which the lands so affected are situated. The court may protect and promote the best interests of the children by setting aside a portion of the property of the parties in a separate fund or trust for

The underlying question with regard to the first issue in this case is the proper characterization of Mr. Steinke's pension plan as either property (and, there-

the support, maintenance, education and general welfare of any minor children of the parties. Any property shown to have been acquired by either party prior to or during the course of the marriage as a gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subjected to a property division under this section except upon a finding that refusal to divide such property will create a hardship on the other party or on the children of the marriage, and in that event the court may divest the party of such property in a fair and equitable manner. The court shall presume that all other property is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct after considering:

"(1) The length of the marriage.

"(2) The property brought to the marriage by each party.

"(2r) Whether one of the parties has substantial assets not subject to division by the court.

"(3) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

"(4) The age and physical and emotional health of the parties.

"(5) The contribution by one party to the education, training or increased earning power of the other.

"(6) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

"(7) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having custody of any children.

"(8) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic family support payments under s. 767.261 and whether the property division is in lieu of such payments.

"(9) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

fore, part of the marital estate subject to division) or as income. There is no statutory presumption of an equal division of the marital income upon a divorce judgment as there is in division of the marital estate. But we have said,

"It would seem reasonable for the trial court to begin the maintenance evaluation with the proposition that the dependent partner may be entitled to 50 percent of the total earnings of both parties. This percentage may, as in the case of property division, be adjusted following reasoned consideration of the statutorily enumerated maintenance factors. We would stress, however, that while this starting point is important, it is not the determinative factor which controls the ultimate award. For, '[i]t is the equitableness of the result reached that must stand the test of fairness on review,' and such a result requires a reasoned starting point adjusted to reflect thoughtful consideration of other important factors." *Bahr v. Bahr,* 107 Wis. 2d 72, 84–85, 318 N.W.2d 391 (1982). (Citation omitted.)

Although the stated issue is whether the trial court abused its discretion in dividing the marital estate, we discuss first the proper characterization of a pension plan as either property or income.

The general treatment of a pension plan in this jurisdiction has been to consider it as property and either divide it or divide other marital assets to effect a *de*

"(10) The tax consequences to each party.

"(11) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

"(12) Such other factors as the court may in each individual case determine to be relevant."

While the 1981–82 statutes are referred to in this opinion, the current language in all sections cited is substantially the same.

*facto* pension division. *See, Leighton,* 81 Wis. 2d at 633. For example, in *Schafer v. Schafer,* 3 Wis. 2d 166, 87 N.W.2d 803 (1958), this court held that the value of a spouse's interest in a postal service pension fund, even though the asset itself was incapable of division, "should have been ascertained and taken into account by the trial court in making the division of estate." *Id.* at 171.

In *Pinkowski v. Pinkowski,* 67 Wis. 2d 176, 226 N.W. 2d 518 (1975), the trial court did not consider the value of a spouse's interest in a vested pension fund. This court held that the value of the fund must be included in the assets to be divided between the parties. The fund's value was to be included notwithstanding the fact that the pension fund would not be paid out until as late as twelve years following the divorce decree, when the pensioned spouse would reach retirement age. *Id.* at 180, 184.[3]

Based on the reasoning of our prior cases, we hold that, as a matter of law, the value of a spouse's interest in a pension fund must be included by the trial court in the division of the property between the spouses.

A spouse's interest in a pension plan is in the nature of property of the marital estate to be divided. The marital estate represents the total of the wealth of property brought into the marriage by either party, as well as wealth accumulated during the marriage, pursuant to the parameters of sec. 767.255, Stats. The division of the estate, presumed to be equal, effectuates the policy that each spouse makes a valuable contribution to

---

[3] For other cases discussing the treatment of pension rights, see *Johnson v. Johnson,* 78 Wis. 2d 137, 254 N.W.2d 198 (1977); *Parsons v. Parsons,* 68 Wis. 2d 744, 229 N.W.2d 629 (1975); and *Schneider v. Schneider,* 15 Wis. 2d 245, 112 N.W.2d 584 (1961).

the marriage and that each spouse should be compensated for his or her respective contributions.[4]  An interest in a pension plan is a part of the wealth brought to, or accumulated during, the marriage.  As with other property constituting the marital estate, the value of the pension interest must be included in the property division.

Our holding is consistent with the rationale of the presumption of equal division of the marital estate. *See*, sec. 767.255, Stats.

"Part of the rationale in creating the presumption of equal property division is that the homemaking partner has contributed services which have enabled the financially supporting partner to achieve his or her station in life, and in so doing the homemaking partner has lost ground in the job market." *In Matter of Marriage of Jasper v. Jasper,* 107 Wis. 2d 59, 68, 318 N.W.2d 792 (1982).

Here, Mrs. Steinke, the predominant homemaking partner in this marriage, will be at least partially compensated for any lost ground in the job market if she is allowed to share in the pension proceeds.  The fruits of her efforts during the marriage are (presumptively one-half of) the assets of the marriage; she has a legal right to share in the asset which is Mr. Steinke's interest in the pension plan.

Because the pension/retirement plan represents wealth accumulated before and during the marriage, the fact that the wealth accumulation was not available to the Steinkes prior to Mr. Steinke's retirement does not de-

---

[4] *See, e.g., Lacey,* 45 Wis. 2d at 382. *See also,* Fineman, *Implementing Equality: Ideology, Contradiction and Social Change,* 1983 Wis. L. Rev. 789, 835. ("The partnership image is compatible with the idea of contribution; each person contributes a different but valuable set of benefits to the good of the whole and the whole should be divided to reflect these contributions if it is dissolved.")

tract from its character as an asset of the marriage. Nor does the fact that the asset is paid out very similarly to how employment income is paid out—on a monthly or semi-monthly basis—diminish its property character.

In affirming the trial court, the court of appeals cited *Leighton,* 81 Wis. 2d at 635, for the proposition that a trial court may exclude an interest in a pension fund from the property division if the fund is considered as income in awarding maintenance. However, the narrow issue in *Leighton* was whether an unvested interest in a retirement plan is to be considered in the property division.

We held in *Leighton* that the same argument which makes an interest in a vested pension plan subject to property division is equally applicable to an unvested pension interest. *Id.* at 634. The *Leighton* language to which the court of appeals refers (regarding the flexibility of treating a pension interest as property or as income) is based on the holding of *Kronforst v. Kronforst,* 21 Wis. 2d 54, 63, 123 N.W.2d 528 (1963). But *Kronforst* merely set forth that it was error for a trial court to consider a profit-sharing trust asset as part of the net estate to be divided and also to include it as income in determining the amount of maintenance. *Id.* at 63–64. Thus, *Kronforst* only established the rule prohibiting the double counting of an asset, once in property division and once in the maintenance award. It did not create a rule that pension rights may be excluded from the property division if they are included in the maintenance award, contrary to the manner in which it is cited in *Leighton.* The language of *Leighton* which expands the holding of *Kronforst* we now recognize as dicta and, therefore, as having no precedential effect.

The result of treating a pension interest as an asset of the marital estate to be divided is certainly in keep-

ing with fairness principles where, for example, the length of the marriage is sufficiently coextensive with the length of employment leading to the interest in the pension plan. But in a situation where a spouse with an interest in a pension which has built up over thirty years, for example, suffers a divorce in his or her marriage after one year, the trial court may consider "[t]he property [i.e., the interest in a pension plan] brought to the marriage by each party" in altering the equal division presumption. Sec. 767.255(2), Stats.

Mr. Steinke argues that it was not incumbent upon the trial court to consider his pension interest in the property division because Mrs. Steinke did not introduce evidence at trial which gave a value to the pension interest. We reject that argument. The trial court must evaluate and include the pension interest in the property division whether or not the parties present evidence on its value. Of course, it would be in the parties' respective best interests to provide such evidence: a proper valuation of the asset will directly affect the division of assets between the parties.

Having decided that Mr. Steinke's interest in his pension plan is part of the marital estate subject to division, we next reach the issue whether the trial court abused its discretion in failing to include the value of the pension in the division of the marital estate.

The division of the marital estate upon divorce is within the sound discretion of the trial court. *Bonnell v. Bonnell*, 117 Wis. 2d 241, 248, 344 N.W.2d 123 (1984). The property division will not be reversed on appeal except for an abuse of discretion. *Id.* "A discretionary determination, to be sustained, must demonstrably be made and based upon the facts appearing in the record and in reliance on the appropriate and applicable law."

*Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). Because the trial court did not include the value of Mr. Steinke's interest in the pension fund in its division of the marital estate, it did not make its decision in reliance on applicable law. Its decision regarding the division, therefore, constitutes an abuse of discretion.

The value of a spouse's interest in a pension plan may be less tangible than, say, an interest in an automobile or a homestead. The latter assets have more easily determinable market values; the former asset has an uncertain market value and may be somewhat more speculative because it involves placing a present value on a series of payments payable in the future. We next address the matter of valuation of the pension interest for the purpose of either dividing it or dividing other assets of the estate to effect a *de facto* pension division.

"We realize that [a pension interest] is one that is very difficult to value." *Schafer,* 3 Wis. 2d at 171. Nevertheless, "its intrinsic value may have to be determined as best the court can in order to do justice between the parties." *Id.* In *Bloomer v. Bloomer,* 84 Wis. 2d 124, 267 N.W.2d 235 (1978), this court discussed three alternatives which the trial court may use in valuing an interest in a retirement fund.

One method is to calculate the amount of the pensioned spouse's contributions to the fund plus interest, and then award the other spouse an appropriate share. *Id.* at 135. A second method is to calculate the present value of the pensioned spouse's retirement benefits when they vest under the plan. This method involves a series of discounting calculations to arrive at a figure that represents the present-day value of pension benefits payable in the future. *See, id.* Finally, the trial court could determine and fix a presumptively equitable percentage of the pension payments "payable to [the nonpensioned spouse]

as, if, and when paid to [the pensioned spouse]." *Id.* at 136.

We do not decide today whether one valuation method is necessarily better than any other. We leave that decision to the trial court, which "retains broad discretion in valuing pension rights and in dividing them between the parties." *Id.* at 134. We note, however, as does Mrs. Steinke, that the third method iterated above involves the least amount of guesswork in valuing Mr. Steinke's pension interest.

■

Previous factual situations of cases before this court have indicated that the pensioned spouse was not yet receiving pension payments at the time of the divorce proceeding. Here, however, pension payments are presently being received monthly by Mr. Steinke. The usual problem of valuing present pension rights, payable in the future, need not be present in this case, because present payments are being made. Because the pension payments of $945 are certain in amount and are received monthly by Mr. Steinke, the trial court could fix a percentage of each pension payment (presumably fifty percent) for Mrs. Steinke. In other words, the least speculative division of this asset is to fix a percentage of the $945 per month for Mrs. Steinke, which Mrs. Steinke would then receive monthly. Such a "valuation" method renders the use of discount rates (and their attendant speculativeness) unnecessary.

## MAINTENANCE AWARD

Having considered and decided the property nature of Mr. Steinke's pension plan, we now focus on the maintenance award of $150 per month for a period of one year to Mrs. Steinke.

As with the division of property, the award of maintenance is within the sound discretion of the trial court. *Bahr,* 107 Wis. 2d at 77.

"[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung,* 102 Wis. 2d at 66.

This court need not search a record to uncover reasons that might have occurred to a trial judge for a result he or she reached where there is no explanation of how or why the result was reached. *Leighton,* 81 Wis. 2d at 628.

The issue is whether the trial court abused its discretion in setting Mrs. Steinke's maintenance award. We conclude that the trial court abused its discretion in setting the maintenance award by failing to indicate in its decision a rational mental process for the award.

An award of maintenance is based upon the needs and income-producing abilities of each party. Other supplementary factors are also to be considered. *Jasper,* 107 Wis. 2d at 70. We note that sec. 767.26, Stats. 1981–82,[5]

---

[5] Section 767.26, Stats. 1981–82, reads as follows:

"**767.26 Maintenance payments.** Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under s. 767.02(1)(g) or (j), the court may grant an order requiring maintenance payments to either party for a limited or indefinite length of time after considering:

"(1) The length of the marriage.

"(2) The age and physical and emotional health of the parties.

"(3) The division of property made under s. 767.255.

"(4) The educational level of each party at the time of marriage and at the time the action is commenced.

"(5) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, custodial

which lists factors a court is to consider in awarding maintenance, intimates that "maintenance is no longer to be based solely on need." *In re Marriage of Lundberg,* 107 Wis. 2d 1, 13, 318 N.W.2d 918 (1982). Thus, the scope of awarding maintenance has broadened: it is not limited to situations where a spouse cannot support herself or himself. Instead, it may be viewed as a tool available to the trial court "to ensure a fair and equitable determination in each individual case." *Id.* at 12.

Mrs. Steinke was awarded varying amounts of maintenance during the pendency of the divorce. On May 18, 1982, she was awarded $500 per month. That amount was lowered to $300 per month on October 27, 1982, due to Mr. Steinke's involuntary income reduction at Miller. Maintenance was increased to $400 per month on April 19, 1983, after Mrs. Steinke lost her job with a securities firm in Brookfield, Wisconsin. Ultimately, the trial court awarded $150 a month to Mrs. Steinke for

responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

"(6) The feasibility that the party seeking maintenance can become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and, if so, the length of time necessary to achieve this goal.

"(7) The tax consequences to each party.

"(8) Any mutual agreement made by the parties before or during the marriage, according to the terms of which one party has made financial or service contributions to the other with the expectation of reciprocation or other compensation in the future, where such repayment has not been made, or any mutual agreement made by the parties before or during the marriage concerning any arrangement for the financial support of the parties.

"(9) The contribution by one party to the education, training or increased earning power of the other.

"(10) Such other factors as the court may in each individual case determine to be relevant."

a one-year period because the trial court determined she had a need for "some financial assistance."

Although the court of appeals deemed the award "unduly low" at first glance in light of Mr. Steinke's pension benefits, it nevertheless summarily affirmed the trial court's maintenance award. The court of appeals found that "upon close examination of the entire record," no abuse of discretion occurred. But the standard of review in a maintenance award does not solely depend upon whether the entire record may support the trial court's award. We also look closely to determine whether the trial court applied the record and engaged in a rational mental process in reaching the award. In other words, "for us to properly defer to the trial court's discretion, the court must illuminate its reasoning in reaching the award." *Bahr,* 107 Wis. 2d at 84. There is no such illumination in the trial court's decision here.

To be sure, the trial court generated findings of fact and conclusions of law and a memorandum decision. But neither of these documents expresses exactly why only $150 per month for only one year is the appropriate maintenance award for Mrs. Steinke after a twenty-four-year marriage. From the trial court's decision, we are apprised only that Mrs. Steinke has a need for financial assistance and that Mr. Steinke is able to pay $150 per month. The findings and conclusions do not illuminate the court's reasoning in reaching the award. To paraphrase language used in *Bahr,* we are left with a nagging question: *Why* is $150 per month for only one year a proper maintenance award under the facts and circumstances of this case? *Bahr,* 107 Wis. 2d at 82. We have no basis to review whether the factors enumerated in sec. 767.26, Stats., were considered. Thus, the trial court abused its discretion by failing to exhibit a reasoned, illuminative mental process with which to logically con-

nect its decision, findings and conclusions to the maintenance award. The trial court must not stop at reciting its findings of fact and conclusions of law and its decision; it must also set forth the factors on which it relied in reaching the maintenance award. *See, e.g., Lacey,* 45 Wis. 2d at 387.

Remand of the maintenance award is also warranted because of the substantial error in not including the pension asset in the property division. We have previously noted that "a substantial error in the property division necessitate[s] reconsideration of the maintenance award . . . ." *Bahr,* 107 Wis. 2d at 80. The monthly payment of Mr. Steinke's pension plan is $945; the actuarial present value of the entire interest at the time of trial was approximately $15,900. Failure to include the value of the pension plan in the marital estate is a substantial error in the property division and warrants reconsideration of the maintenance award.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.