IN RE the MARRIAGE OF: Anne M. RODAK, Petitioner-Respondent,

v.

David R. RODAK, Respondent-Appellant.

Court of Appeals

*No. 88–1269. Submitted on briefs March 10, 1989.—Decided April 12, 1989.*

(Also reported in 442 N.W.2d 489.)

624

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Richard E. Reilly* and *Marna M. Tess-Mattner* of *Gimbel, Reilly, Guerin & Brown,* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James H. Morgan* of *Morgan Law Office,* of Cedarburg.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. David Rodak appeals from the property division and attorney's fees provisions of a divorce judgment. As to the property division, David argues that the trial court erred: (1) by failing to designate as nonmarital property the portion of his pension plan related to his premarriage employment; (2) by fashioning an equal property division; and (3) by incorrectly valuing an antique automobile. We reject David's arguments and affirm those portions of the judgment.

David also argues that the trial court's order directing an attorney's fees contribution of $2000 is an abuse of discretion. We interpret the award as an attempt to balance the property division rather than as a conventional attorney's fees contribution. Viewed in this light, we affirm the award.

## FACTS

The controlling facts on all the issues in this case are not in dispute. David and Anne Rodak were married on February 16, 1974. The marriage was David's second and Anne's first. The parties have no children. The marriage lasted for thirteen years. David was fifty-eight at the time of the divorce; Anne was forty-two.

At the time of the marriage, David had been employed at the A.O. Smith Corporation for ten years and Anne had been employed at Wisconsin Bell for about one year. David continued his employment with A.O. Smith throughout the marriage.[1] Anne terminated her employment at Wisconsin Bell after approximately five years' service. She served as a homemaker for the balance of the marriage.

---

[1] Shortly after the divorce, David went on disability leave from A.O. Smith, receiving one-half of his prior salary.

As an A.O. Smith employee, David participated in the company pension plan. David's interest in the plan vested after ten years of employment—approximately two months after the parties' marriage. The stipulated value of the plan at the time of the divorce was $27,000.

Additional facts pertaining to the property division and the other issues will be recited as the discussion warrants.

## I. PROPERTY DIVISION

### A. Pension Plan

The trial court included the entire stipulated value ($27,000) of David's pension plan in the marital estate. David appeals, arguing that the portion attributable to his premarriage employment is nonmarital property. We disagree.

Although neither party addresses sec. 767.255, Stats., Wisconsin's property division statute, we deem it the appropriate starting point. Section 767.255 reads in part:

> Any property shown to have been acquired by either party prior to or during the course of the marriage as a *gift, bequest, devise or inheritance or to have been paid for by either party with funds so acquired shall remain the property of such party and may not be subject to a property division under this section.* [Emphasis added.]

We deem this language to be plain and unambiguous.[2] "The only property accorded exclusionary status

___

[2] Prior case law demonstrates some conflict on the question of whether sec. 767.255, Stats., is ambiguous. *Plachta v. Plachta,* 118 Wis. 2d 329, 348 N.W.2d 193 (Ct. App. 1984), without saying so, implies that the statute is ambiguous because the court of

under sec. 767.255, Stats., is that (1) acquired by gift, bequest, devise or inheritance, or (2) paid for with funds so acquired." *Arneson v. Arneson,* 120 Wis. 2d 236, 245, 355 N.W.2d 16, 20 (Ct. App. 1984). The legislature has not chosen to exempt pension plans from the marital estates of parties to divorce actions.

David argues, however, that *Bloomer v. Bloomer,* 84 Wis. 2d 124, 267 N.W.2d 235 (1978), supports his position, citing to its language that "pension rights earned during marriage are properly included as a marital asset in dividing the property of the spouses." *Id.* at 129, 267 N.W.2d at 238. While David correctly cites the language of *Bloomer,* he overlooks that the issue in *Bloomer* was valuation of the marital estate—not the composition of the marital estate. In fact, the parties in *Bloomer* were married *before* Mr. Bloomer commenced his employment and his resultant participation in the pension plan. *Bloomer* does not speak to the issue in this case.

David also cites *Olson v. Olson,* 148 Wis. 2d 219, 435 N.W.2d 266 (Ct. App. 1988), in support of his position. In *Olson,* the court of appeals reversed a family court ruling including the full value of a pension relating to employment which spanned the duration of the mar-

appeals construed the statute when determining that appreciation of nonmarital property due to inflation and general economic conditions was also nonmarital. *Id.* at 332-34, 348 N.W.2d at 195-96.

*Arneson v. Arneson,* 120 Wis. 2d 236, 355 N.W.2d 16 (Ct. App. 1984), suggests to the contrary when determining that property purchased with the income from exempt property was marital property. *Id.* at 243, 355 N.W.2d at 19.

Both *Plachta* and *Arneson,* however, were concerned with the application of their facts to the statute, not an intrinsic interpretation of the statute itself.

riage. *Id.* at 224, 435 N.W.2d at 268. However, the basis for the reversal in *Olson* was not the family court's inclusion of the pension in the marital estate. Rather, the reversal was premised on the family court's apparent belief that it was obligated to equally divide the asset to the exclusion of any consideration that 24% of the pension value had been earned prior to the marriage. *Id.* Thus, *Olson* is an abuse of discretion case, not a marital estate case. It, therefore, does not control the issue here.

Although the issue in *Steinke v. Steinke,* 126 Wis. 2d 372, 376 N.W.2d 839 (1985), was whether consideration of a spouse's pension for purposes of maintenance warranted exclusion of the asset from the marital estate for purposes of property division, the logic and analysis of the supreme court is relevant to the discussion here.

In *Steinke,* the husband had been employed at Miller Brewing Company for thirty-five years prior to and during the marriage. At the time of the divorce, he had taken early retirement and was receiving his pension on a monthly basis. The trial court considered the pension payments on the question of the husband's ability to pay maintenance. For this reason, the trial court excluded the pension from the marital estate. The supreme court reversed,[3] noting:

> A spouse's interest in a pension plan is in the nature of property of the marital estate to be divided. The marital estate represents the total of the wealth of property brought into the marriage by either party, as well as wealth accumulated during the marriage,

---

[3] By reversing, the supreme court concluded that its earlier language in *Leighton v. Leighton,* 81 Wis. 2d 620, 261 N.W.2d 457 (1978), permitting exclusion of an asset for property division if the asset was considered for maintenance purposes, was dicta. *Steinke v. Steinke,* 126 Wis. 2d 372, 382, 376 N.W.2d 839, 844 (1985).

pursuant to the parameters of sec. 767.255, Stats. The division of the estate, presumed to be equal, effectuates the policy that each spouse makes a valuable contribution to the marriage and that each spouse should be compensated for his or her respective contributions. *An interest in a pension plan is a part of the wealth brought to, or accumulated during, the marriage.* As with other property constituting the marital estate, the value of the pension interest must be included in the property division.

*Id.* at 380–81, 376 N.W.2d at 843–44 (footnote omitted, emphasis added).

Although this language was not offered in the context of the challenge presented here—that the premarriage component of the pension should not be included in the marital estate—it nonetheless echoes the concept that marriage is akin to an economic partnership between the spouses. *Id.* at 377, 376 N.W.2d at 842. This is the philosophy which underpins sec. 767.255, Stats. With this in mind, we conclude that a pension plan relating to employment which spans the date of marriage represents wealth accumulated before and during the marriage, is a marital asset and is subject to division pursuant to sec. 767.255.[4] The premarital component of the plan is in the nature of property brought to the marriage—a factor which may be relevant as to *how* the asset should be divided—not whether it should be. *See* sec. 767.255(2).

---

[4] When the plan vests does not bear upon this issue. Even nonvested rights must be considered in dividing the marital property. *Leighton,* 81 Wis. 2d at 634, 261 N.W.2d at 463–64.

## B. Equal Property Division

David next challenges the decision of the trial court to divide the marital property equally. Specifically, he argues that the court failed to consider that he brought a substantial estate to the marriage and that he contributed certain of his nonmarital inherited property to the enhancement of the marital estate.

A property division rests within the sound discretion of the trial court. *Brandt v. Brandt,* 145 Wis. 2d 394, 406, 427 N.W.2d 126, 130 (Ct. App. 1988). To be sustained, a discretionary determination must be the result of a rational mental process where the facts of record and law relied upon are stated and considered together to achieve a reasoned and reasonable decision. *LaRocque v. LaRocque,* 139 Wis. 2d 23, 27, 406 N.W.2d 736, 737 (1987).

Our examination of the trial court's decision satisfies us that it reflects a proper exercise of judicial discretion. David's complaint that the trial court failed to consider the property he brought to the marriage is without merit. The very first matter addressed in the court's decision is David's contention that the property division should be adjusted in his favor because he brought this property to the marriage.

Next, David complains that the court failed to consider the exempt, inherited property which he brought to the marriage.[5] This is incorrect. The trial court expressly

---

[5] This inherited property, to the extent it was not commingled, was not included in the marital estate and remained David's separate property. Its value is variously represented as $30,000 in David's financial statement and $70,000 in David's briefs both in the trial court and on appeal.

addressed this argument, noting that David was seeking an uneven property division based on this factor.

These two reasons were the only ones David asserted in the trial court in his effort to persuade the court to make a 70/30 property division in his favor. On appeal, David broadens this attack, citing additional factors which he argues the trial court should have considered (i.e., the length of the marriage, the health of the parties, the educational level of the parties and Anne's plans to remarry). The trial court obviously did not consider these additional factors to be sufficiently relevant. David's failure to assert them in the trial court supports this conclusion. To argue their relevancy now is hindsight.[6]

## C. Valuation of Antique Automobile

During the marriage, David bought and restored a 1939 Ford coupe. At trial, David estimated the value of the vehicle at $3700, based upon the December 1987 edition of *Old Cars Price Guide.* This publication lists values for antique vehicles based upon a rating system tied to the condition of the vehicle. According to the guide, the highest value for the 1939 Ford is $7500.

Anne presented the appraisal report of Jane Elconin, who valued much of the personal property on Anne's behalf. Elconin did not testify. Her report was received into evidence without objection from David.

---

[6] Even if we were to address David's additional challenges to the property division raised on appeal, we would affirm the trial court's ruling. We are permitted to independently review the record to determine whether the discretionary result is proper. *See State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983). We have done so and are independently satisfied that the trial court's equal property division is not an abuse of discretion.

The report indicates that Elconin "appraised the . . . automobile at N76 W7182 Linden Avenue." In addition, the report identifies "Tom Collins, Collins Classic Cars" as a consultant on the appraisal. Elconin valued the vehicle at $7500.

The trial court valued the vehicle at a "middle" figure of $5425.

■

We note that David's complaint on appeal is not regarding the admissibility of the appraisal report. Rather, he argues that the trial court's valuation is wrong. A value determination is a finding of fact which will not be set aside unless clearly erroneous. *Arneson,* 120 Wis. 2d at 248, 355 N.W.2d at 22; *see also* sec. 805.17(2), Stats.

■

With the Elconin appraisal report in evidence, we see the issue as one going to the weight and credibility of the evidence. This is a matter for the fact finder. Sec. 805.17(2), Stats. Here, the parties do not dispute that Elconin personally viewed the vehicle and also consulted with a third party presumably versed in the field. While David's testimony might seem to us, from this distant perspective, to be the stronger on this question, we cannot say that the trial court's finding as to value is clearly erroneous.

Nor do we conclude that the trial court's selection of a "middle" valuation figure is error given the record in this case. While at first blush it appears that the court may have improperly averaged the two disparate figures, a closer look reveals that the court considered two factors in the valuation—David's purchase price of $1000 and his restoration efforts. The effect of the latter is a matter in dispute. David claims that his restoration was merely amateur's work and not of a quality to put the

vehicle in the top-grade category. Elconin's appraisal, on the other hand, puts the vehicle in the "best" condition category.

Given the dispute on this matter, we do not see the trial court as obligated to fully adopt either side's contention as to the degree or quality of the restoration. In short, the dispute about the quality of the restoration work is what makes the trial court's valuation finding not clearly erroneous.

Next, David argues that the court erred in failing to reduce the vehicle's value by the $1000 loan he obtained from his daughter to purchase the automobile. The parties' post-trial briefs addressed the subject of debts, including this vehicle debt. However, the court's decision is silent as to the parties' debts. This failure is an oversight or omission constituting "manifest error" within the meaning of *Schinner v. Schinner,* 143 Wis. 2d 81, 92, 420 N.W.2d 381, 385 (Ct. App. 1988). Such an error requires prior application to the trial court pursuant to sec. 805.17(3), Stats., for further findings before we will address the issue on appeal.[7]

## II. ATTORNEY'S FEES

██ As his final issue, David complains that the trial court's award of $2000 attorney's fees contribution to Anne is an abuse of discretion. Specifically, David contends that the trial court's decision on this question reveals no consideration of the relevant factors, i.e., reasonableness, need, and ability to pay. *See Kastelic v. Kastelic,* 119 Wis. 2d 280, 290, 350 N.W.2d 714, 719 (Ct.

---

[7] Moreover, if we were to modify the judgment to allow for this $1000 obligation, we would be upsetting the trial court's equal property division because the other marital debts are not before us on this appeal.

App. 1984). Were this award a conventional attorney's fees issue, we would likely agree with David. However, we do not construe the award as such.

The trial court's "contribution" award was premised upon David's earlier depletion of the marital estate by $2000—$1000 for a civil matter unrelated to the divorce and $1000 David paid to his attorney in the divorce action. The trial court noted that this had the effect of reducing the parties' certificate of deposit at the Ozaukee Bank by $2000. As such, the trial court's "contribution" order was principally designed to make the marital estate whole—not specifically to assist Anne in paying her attorney's fees. Viewed in this light, the trial court was not required to make the usual findings associated with a contribution to attorney's fees question.[8]

*By the Court.*—Judgment affirmed.

---

[8] The net effect of the award requiring David to reimburse Anne for this $2000 is not in strict keeping with the equal property division which the trial court fashioned. Theoretically, David and Anne were each entitled to $1000 of this $2000 marital asset. The award, however, gives the full $2000 to Anne. We view this $1000 "imbalance" as *de minimus,* however, when dealing with a marital estate valued at nearly $187,000.