In re the MARRIAGE OF:

Missy Ann DERLETH p/k/a Missy Ann Cordova,
Petitioner-Appellant,

v.

Andrew Cole CORDOVA, Respondent-Respondent.
[Case No. 2012AP2018]

In re the MARRIAGE OF:

Missy Ann DERLETH p/k/a Missy Ann Cordova,
Petitioner-Respondent,

v.

Andrew Cole CORDOVA, Respondent-Appellant.
[Case No. 2012AP2802]

Court of Appeals

*Nos. 2012AP2018, 2012AP2802. Submitted on briefs
September 3, 2013.—Decided November 5, 2013.*

2013 WI App 142

(Also reported in 841 N.W.2d 552.)

51

On behalf of the petitioner-appellant, petitioner-respondent, the cause was submitted on the briefs of *Amy L. Ferguson* and *Todd R. McEldowney* of *O'Melia, Schiek & McEldowney, S.C.*, Rhinelander.

On behalf of the respondent-respondent, respondent-appellant, the cause was submitted on the briefs of *John J. Hogan* and *Jennifer A. Stuber* of *Hogan and Melms, LLP*, Rhinelander.

Before Hoover, P.J., Mangerson and Stark, JJ.

¶ 1. HOOVER, P.J. Missy Derleth appeals a divorce judgment, arguing the circuit court had no authority to restrict her from moving outside the geographical area of the marital home as part of the child custody determination. Additionally, she argues the court erroneously excluded fringe benefits from her former husband's income and assets when determining child support and maintenance, and erroneously failed to consider the unvested part of one portion of a retirement account when dividing property.

¶ 2. Andrew Cordova, Derleth's former husband, appeals a subsequent order that effectively nullified the moving restriction the divorce judgment had imposed on Derleth.[1]

---

[1] The original divorce judgment was entered by Reserve Judge C. A. Richards. The order granting Derleth's request to move was entered by Judge Michael H. Bloom. The parties filed separate appeals, which were later consolidated.

¶ 3. We hold that the circuit court was without authority to restrict an intrastate move under 150 miles. Accordingly, we affirm the subsequent order that permitted Derleth to move. Further, we affirm that part of the divorce judgment addressing child support and maintenance, but reverse with regard to the property division issue.

## BACKGROUND

¶ 4. Derleth and Cordova were married in June 2006. They previously resided in the Appleton area, but moved to Rhinelander to enhance Cordova's accounting career. Derleth scaled back her level of employment after each of the couple's children was born, in 2007 and 2010. She expressed a desire to return to Appleton throughout the marriage. Derleth filed for divorce in December 2011, and made employment, housing, school, and daycare arrangements in the Appleton area.

¶ 5. A final divorce hearing was held in May 2012. The circuit court found that Derleth had been the primary caregiver for the children. It also determined it was not feasible for Cordova to have primary placement of the children due to his work schedule. The court ordered joint custody with shared placement.

¶ 6. Derleth introduced a Mapquest map that showed her intended home with her boyfriend in Menasha was approximately 147 miles away from the marital home. Cordova and the guardian ad litem (GAL) were opposed to the move. The GAL declined to recommend a specific distance, but opined Derleth should be required to live within the local geographical area. Ultimately, the court concluded:

Looking at [Wis. Stat. §] 767.41(5), I am going to restrict the placement to the geographical area.[2] I would say 45 miles would be subject to the best interest[s] of the children. We do have this mobility issue between [*Groh v. Groh*, 110 Wis. 2d 117, 327 N.W.2d 655 (1983)] and, of course, [§] 767.481 and 767.41, but I think that the best interests of the children have to predominate over the other factors, and it appears clear to the court based upon the testimony presented here, the credibility of the testimony of each of the witnesses, that the best interest[s] of the children are served by having placement be restricted to the 45 mile geographical area.

¶ 7. The court also resolved issues of child support, maintenance, and property division. When determining child support and maintenance, the court excluded fringe benefits when calculating Cordova's gross income. With regard to property division, the court did not divide all of Cordova's retirement account. The retirement account was comprised of three parts, two of which were fully vested. The third part, profit sharing, was only eighty percent vested, but was due to be fully vested fifteen days after the final hearing. The court valued that part of the account at eighty percent of full value for purposes of the property division.

¶ 8. Derleth filed a notice of appeal from the divorce judgment in September 2012. The following month, she filed in the circuit court "motions for contempt and allowing move of less than 150 miles." At the motion hearing the next month, the court indicated:

Here's my concern. I mean, my initial reading of the language in *Groh* is that the court just can't do it period. The language is pretty straightforward. Okay.

[2] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

But we have a situation where Judge Richards made a ruling, apparently *Groh* was brought to his attention, and it's on appeal before the Court of Appeals. And so in effect what I'm being asked to do is even though I look at it and I might say Judge Richards is just plain wrong, but procedurally I don't see how I can do that.

. . . .

I'm making a finding that the law does not allow a trial court based on *Groh* to order where a custodial parent should live within the state so long as the move . . . is within 150 miles. The *Groh* decision very directly and clearly states that.

While I am bothered by the—I am uncomfortable and not necessarily certain of my authority to basically remove that part of the judgment given the procedural posture of this case, I'm finding that the law does not preclude [Derleth] from moving within 150 miles of the marital residence.

Following the hearing, the court issued an order stating: "Wis. Stat[]. § 767.481 and the *Groh* decision clearly provide that the court may not preclude [Derleth] from moving within 150 miles. Therefore, [Derleth] is allowed to do so." Cordova appeals that order.

## DISCUSSION

*Limitation on Derleth moving*

■

¶ 9. The parties' appeals both raise the same issue: whether *Groh* and Wis. Stat. § 767.481 prohibited the circuit court from imposing the forty-five-mile moving restriction on Derleth. Because the issue is before us in both appeals, we need not concern ourselves with any procedural questions concerning the circuit court's review of the matter while Derleth's

59

appeal was pending.[3] Interpretation and application of statutes to a particular set of facts presents a question of law that is reviewed de novo. *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989).

¶ 10. In *Groh*, the court addressed a provision in what was then the visitation statute, WIS. STAT. § 767.245(6) (1979–80), which provided in part:

> Whenever the court grants visitation rights to a parent, it shall order the child's custodian to obtain written approval of the parent having visitation rights or permission of the court in order to establish legal residence outside of this state or to remove the child from this state for a period of time exceeding 90 days.

The court held this provision prohibited a court from requiring a custodial parent who had lived in Milwaukee at the time of divorce to move back from Rhinelander to within fifty miles of Milwaukee. *Groh*, 110 Wis. 2d at 119, 124.

¶ 11. The court explained, " 'in Wisconsin it has long been held that the courts of this state have no common-law jurisdiction over the subject of divorce and that their authority is confined altogether to such express and incidental powers as are conferred by statute (citing cases). *Such is undoubtedly the law.*' " *Id.* at 122–23 (quoting *Dovi v. Dovi*, 245 Wis. 50, 55, 13 N.W.2d 585 (1944)). Further, "where the legislature has set forth a plan or scheme as to the manner and limitation of the court's exercise of its jurisdiction, that expression of the legislative will must be carried out and power limitations adhered to." *Id.* at 123.

---

[3] Even if the court exceeded its authority in the second decision—which Cordova does not argue—the underlying issue would still be properly before us in Derleth's appeal. Assuming the court acted within its authority in the second decision, then the issue is moot in Derleth's appeal and properly before us in Cordova's appeal.

60

¶ 12. Turning to the statute, the court observed WIS. STAT. § 767.245(6) (1979–80), "requires that a child's custodian obtain written permission of the non-custodial parent or permission of the court in order to establish legal residence *outside the state.*" *Groh,* 110 Wis. 2d at 124–25. Interpreting this subsection, the court held it "cannot be read to give the court the power to order that a custodial parent live in a designated part of the state or lose custody of the children." *Id.* at 125. The court reasoned:

> Application of the doctrine of *expressio unius est exclusio alterius* to section 767.245 leads to the conclusion that the legislature's failure to specifically confer the power is evidence of legislative intent not to permit the exercise of the power. Application of this doctrine to this section is particularly appropriate because this statute is part of a comprehensive legislative plan addressing actions affecting the family. In considering the effect that the relocation of a custodial parent may have upon the visitation rights of a noncustodial parent, the legislature could have required that the custodial parents receive court permission for moves within the state. It did not establish such a requirement. *The power that the legislature gave was one over out-of-state moves. The court has no power to order where a custodial parent should live within the state.*

*Id.* (emphasis added).

¶ 13. Finally, the *Groh* court rejected an argument that courts had broad authority to issue any order affecting custody so long as it was made in the best interests of the children. *Id.* at 125–26. It explained:

> If the trial court had the power to make any order it pleased so long as the order could somehow be justified by recitation of the rubric "in the best interests of the children," the limits the legislature placed on the court's

exercise of power in custody matters would be meaningless. Legal custody is subject to the provisions of court orders[, but] it is subject only to orders that the court is empowered to make. Since the court lacked the power to order the mother to move or lose custody, the order is a nullity.

*Id.* at 126.

¶ 14. Since the 1983 *Groh* decision, the legislature has significantly altered the divorce statues, removing the concept of parental visitation and introducing the concepts of joint custody and physical placement. Nonetheless, it is apparent that WIS. STAT. § 767.245(6) (1979–80), has largely survived in a corollary, WIS. STAT. § 767.481(1)(a), which provides:

If the court grants periods of physical placement to more than one parent, it shall order a parent with legal custody of and physical placement rights to a child to provide not less than 60 days' written notice to the other parent, with a copy to the court, of his or her intent to:

1. Establish his or her legal residence with the child at any location outside the state.

2. Establish his or her legal residence with the child at any location within this state that is at a distance of 150 miles or more from the other parent.

3. Remove the child from this state for more than 90 consecutive days.

While the two provisions are broadly similar, the legislature has expanded a court's authority to limit where a custodial parent resides, granting the power to regulate intrastate moves of 150 or more miles. As relevant here, "The court may prohibit the move . . . if, after consider-

ing [enumerated] factors . . ., the court finds that the prohibition is in the best interest of the child." Wɪꜱ. Sᴛᴀᴛ. § 767.481(3)(c)1.[4]

¶ 15. We conclude *Groh* is still good law, subject to the expanded authority granted over intrastate moves of 150 or more miles. Indeed, Cordova does not contend otherwise. Accordingly, the circuit court here had no authority to prospectively order that Derleth not move beyond forty-five miles from the marital home in Rhinelander. As in *Groh*, here the court determined it had the authority to do so in the best interests of the children. "The question of whether the application of the 'best interests of the child' test permits an otherwise unauthorized order was flatly rejected by the supreme court in *Groh*[.]" *Jocius v. Jocius*, 218 Wis. 2d 103, 117–18, 580 N.W.2d 708 (Ct. App. 1998). By its enactment of Wɪꜱ. Sᴛᴀᴛ. § 767.481, the legislature has made a judgment that moves of less than 150 miles are not subject to the best interests of the children standard.

¶ 16. Cordova, however, argues the circuit court could restrict Derleth's proposed move because *Groh* and Wɪꜱ. Sᴛᴀᴛ. § 767.481 apply only after there has been an initial judgment allocating custody and placement. He emphasizes that was the procedural status that existed in *Groh*. Further, he asserts § 767.481 only sets "forth the procedure which must be followed when a parent, in a family *where more than one parent has been granted periods of placement,* wants to move with the minor children . . . . (Emphasis added)." Accordingly, Cordova contends, "§ 767.481 only becomes the govern-

_____

[4] The statute also allows a court to modify custody or physical placement. *See* Wɪꜱ. Sᴛᴀᴛ. § 767.481(3)(a)1., (3)(b)1., (3)(c)1.

ing statute after an original order grants both parties periods of physical placement." He argues the governing statute is instead Wis. Stat. § 767.81.

¶ 17. Cordova's argument fails to get out of the gate. To begin with, his quasi-quotation of the statute is erroneous. As set forth above, Wis. Stat. § 767.481(1)(a) is actually written in the present tense. It applies to the original divorce judment, requiring the court to order parents to provide notice if they intend to move 150 miles or more. In fact, the original divorce judgment in this case that prohibited Derleth's move ironically also included the very order required by § 767.481(1)(a).[5] Moreover, the statute could not reasonably be interpreted to apply only after there has been an initial order or judgment allocating custody and placement. Because under *Groh* a court would have no authority to restrict a move after the original order was entered, the order containing such a restriction would immediately become unenforceable, rendering it a nullity. Indeed, that is precisely the situation that arose here.

¶ 18. We further observe that, inconsistent with Cordova's interpretation, *Groh* spoke in very broad terms: "The power that the legislature gave was one over out-of-state moves. The court has no power to order where a custodial parent should live within the state." *Groh*, 110 Wis. 2d at 125. Thus, while *Groh* may have involved a situation where the court's restrictive order came after an initial custody determination, its holding was not so limited. In any event, Cordova's argument fails because there was a temporary order already in place at the time the court issued its restriction.

---

[5] The divorce judgment recited the entirety of Wis. Stat. § 767.481, representing two and a half pages of the document.

■

¶ 19. We also find unconvincing Cordova's argument that the custody and physical placement statute, WIS. STAT. § 767.41, permitted the moving restriction. Cordova asserts the court acted within its authority because "in determining legal custody and periods of physical placement, the court shall consider all facts relevant to the best interest of the child." WIS. STAT. § 767.41(5).

■

¶ 20. However, the court can accommodate the children's best interests in an initial custody and placement determination without violating the limits of authority established by *Groh* and WIS. STAT. § 767.481. In fact, WIS. STAT. § 767.41 expressly provides that a court should consider the fact of geographical separation of the parents:

> The court shall set a placement schedule that allows the child to have regularly occurring, meaningful periods of physical placement with each parent and that maximizes the amount of time the child may spend with each parent, taking into account geographic separation and accommodations for different households.

WIS. STAT. § 767.41(4)(a)2. Thus, rather than providing a court authority to prohibit geographical separation, the statute presumes such separation exists and directs the court to consider the separation when establishing a placement schedule. Further, geographical separation is not specified as one of the reasons permitting a court to deny joint custody to a parent. *See* WIS. STAT. § 767.41(2).

¶ 21. Cordova also argues the circuit court committed two procedural errors when it granted Derleth's motion to move less than 150 miles. We first observe that any procedural errors are irrelevant on appeal because

the underlying issue is one of law, comes before us also in Derleth's appeal, and Cordova has not argued Derleth's appeal is moot or otherwise improper. Regardless, we reject Cordova's arguments on the merits.

■■

¶ 22. First, Cordova argues the court was required to appoint a GAL prior to deciding Derleth's motion, both because there was "reason for special concern as to the welfare of a minor child" and "legal custody or physical placement of the child[ren] [was] contested." WIS. STAT. § 767.407(1)(a)1.-2. We disagree on both counts. The legislature has already determined that an intrastate move of less than 150 miles is too insignificant to require consideration of the children's best interests. Accordingly, we are not satisfied that such a move gives rise to special concerns for their welfare. As to the second alternative, Derleth's motion to move requested modification of neither custody nor placement, and the order granting her motion did not modify either. And, even if custody or placement was implicated, a statutory exception to appointment applies because (1) the requested order would not substantially alter the amount of time the children spent with Cordova, and (2) appointment of a GAL would not have assisted the court, because a GAL had already weighed in on the very issue and the court was presented only with a question of law. *See* WIS. STAT. § 767.407(1)(am)2., 3.a.[6] Finally, even assuming, arguendo, the court erred by failing to appoint a GAL, that error was harmless. As we have already determined, the circuit court had no choice but to permit Derleth to move. A GAL could not have affected that result.

---

[6] There is also a third element to the exception, which Cordova concedes was satisfied.

¶ 23. Cordova next argues the court erroneously failed to treat Derleth's motion as a motion under WIS. STAT. § 767.451(1)(a), which generally prohibits modifications of custody or placement in the first two years after the initial judgment. We reject this argument on multiple bases as well. First, Derleth forfeited this argument by failing to present it in the circuit court. *See State v. Huebner*, 2000 WI 59, ¶¶ 10–12, 235 Wis. 2d 486, 611 N.W.2d 727. Second, the motion was what it said it was: a motion to move. Subsection 767.451(1)(a) applies only to motions to modify custody or substantially modify placement; Derleth's motion sought neither. Third, § 767.451 expressly exempts motions under WIS. STAT. § 767.481 to move 150 or more miles. Clearly, if § 767.451 does not bar requests for substantial moves, it cannot reasonably be interpreted to foreclose insubstantial moves.

¶ 24. Finally, Cordova argues the court erroneously determined Derleth's move was under 150 miles. At the hearing on Derleth's requested move, Cordova argued the court should utilize the Highway 51 to Highway 10 route the parties typically traveled between Rhinelander and Appleton, which was more circuitous, but faster. The court rejected that argument, addressing Derleth's proposed route via Highway 45, as follows:

> I'm someone who grew up in Appleton. The idea of driving between the Rhinelander and Appleton area and not taking Highway 45 is unusual. Now, in this day of age of 65 mile an hour speed limits and people having GPS units and that kind of nonsense, there's different ways that different people approach those things and

that's fine, but there is nothing—I mean, taking Highway 45 is not taking the back roads to the Fox Valley period.

The circuit court's factual determination that the homes were less than 150 miles apart, by considering a usual and direct route, was not clearly erroneous. Accordingly, we accept that finding. *See Minuteman*, 147 Wis. 2d at 853.

*Child support, maintenance, and property division*

¶ 25. Derleth argues the circuit court erred when determining child support because it excluded Cordova's fringe benefits from his gross income, reducing his monthly income from approximately $5,042 to $4,580. Specifically, the court excluded monthly employer contributions of approximately $440 for health insurance, $14 for dental insurance, and $8 for vision coverage. Derleth contends the court erred because the relevant statutes and administrative code provisions require that support be based on gross income, which includes "[a]ll . . . income, whether taxable or not . . . ." Wis. Admin. Code § DCF150.02(13)(a)10. (Nov. 2009).

¶ 26. It appears Derleth failed to preserve her argument for review. *See Huebner*, 235 Wis. 2d 486, ¶¶ 10–12. The court made its support determination following off-the-record rulings and Derleth's counsel made no objection or record of the court's reasoning. In any event, the court could have reasonably excluded the insurance benefits in its discretion. *See* Wis. Stat. § 767.511(1m); *Edwards v. Edwards*, 97 Wis. 2d 111, 116, 293 N.W.2d 160 (1980) (ultimate determination of child support "rests within the sound discretion of the trial court"). The divorce judgment required Cordova to

68

maintain comprehensive health insurance on the two young children, and pay the premiums, until the children reached the age of majority. Thus, the court's decision to exclude the insurance benefits from Cordova's gross income was entirely reasonable.

¶ 27. Derleth next argues the court erred by excluding his fringe benefits from his income when determining maintenance. "The determination of the amount and duration of maintenance is entrusted to the sound discretion of the circuit court . . . ." *In re LaRocque*, 139 Wis. 2d 23, 27, 406 N.W.2d 736 (1987).

¶ 28. Derleth contends the court erred because "all sources of income, ordinary and extraordinary, are to be considered when establishing or modifying maintenance." *Dowd v. Dowd*, 167 Wis. 2d 409, 415, 481 N.W.2d 504 (Ct. App. 1992). Her argument fails, however, because the court did consider the fringe benefits, it merely decided not to incorporate them in the calculation, explaining: "I've considered the fringe benefits, but also—I've considered them, but I'm not going to include them in this matter . . . ." The court then set forth its rationale for doing so, explaining that it was a compromise in light of another maintenance determination that reduced Derleth's gross income for purposes of the calculation. Derleth may disagree with the court's rationale, but that does not constitute grounds for reversal of a determination that is left wholly to the court's discretion.

¶ 29. Finally, Derleth argues the court erroneously valued Cordova's retirement account when dividing the marital property. Because the court excluded from division twenty percent of the profit-sharing part of the account—consistent with its status as eighty

percent vested—the total valuation of the retirement account was reduced by $3107.34.

¶ 30. The division of the marital estate upon divorce is within the sound discretion of the trial court. *Steinke v. Steinke*, 126 Wis. 2d 372, 383, 376 N.W.2d 839 (1985). However, "as a matter of law, the value of a spouse's interest in a pension fund must be included by the trial court in the division of the property between the spouses."[7] *Id.* at 380. Accordingly, failure to include the value of a retirement fund in the division of the marital estate constitutes an erroneous exercise of discretion. *Id.* at 384.

¶ 31. Further, a retirement fund must be divided even if unvested at the time of divorce. In *Steinke*, the court observed: "We held in *Leighton [ v. Leighton*, 81 Wis. 2d 620, 634, 261 N.W.2d 457 (1978),] that the same argument which makes an interest in a vested pension plan subject to property division is equally applicable to an unvested pension interest." *Id.* at 382. In *Leighton*, the issue was "whether unvested interests in retirement plans are to be taken into account in property divisions." *Leighton*, 81 Wis. 2d at 634. The court held, "[T]he fact that the interest is contingent does not mean it may be ignored in property divisions in divorce actions." *Id.* at 635. The court explained that "the employee's interest in a pension plan, even one that is noncontributory on his part, is not a mere gratuity or expectancy, but an enforceable contract right." *Id.* at

---

[7] Indeed, the court further held, "The trial court must evaluate and include the pension interest in the property division whether or not the parties present evidence on its value." *Steinke v. Steinke*, 126 Wis. 2d 372, 382–83, 376 N.W.2d 839 (1985).

70

635–36. Accordingly, when dividing an unvested fund, the rule is that "the trial court 'must consider all the circumstances and evaluate the probability that the party who has a contingent right to a pension will eventually enjoy that pension.' "[8] *Id.* at 635 (quoting *Wilder v. Wilder*, 534 P.2d 1355, 1358 (Wash. 1975)).[9]

¶ 32. Here, the court essentially assigned a value of zero to the unvested portion of the profit-sharing fund. The court's only explanation for doing so was that "[p]roperty must be valued as of the date of the hearing." While that may be true, a court may not simply assign a value of zero to all contingent interests. Cordova's profit-sharing account was due to fully vest approximately two weeks after the final hearing, and

---

[8] After setting forth the rule we recite above, the court observed, "Thus it would continue to be the rule that it is not error to exclude an interest in a pension fund from the division of estate if it is considered as income in awarding alimony." *Leighton v. Leighton*, 81 Wis. 2d 620, 635, 261 N.W.2d 457 (1978). However, the court overruled this language in *Steinke*, and held that retirement funds must be divided as property. *See Steinke*, 126 Wis. 2d at 382–83.

[9] In *Wilder v. Wilder*, 534 P.2d 1355, 1358–59 (Wash. 1975), the court determined it was appropriate to divide a contingent pension interest, where the husband had completed nearly nineteen of the twenty years required for vesting and he intended to continue employment. Considering those facts, the court observed, "It was therefore virtually certain that the appellant would become entitled to his pension, barring some unforeseen event beyond his control which would cut off his entitlement." *Id.* In explaining the rule subsequently adopted in *Leighton*, the court explained, "The length of time remaining before eligibility matures is a factor for the court to consider; also, the other options open to the person and the likelihood that he may, in the exercise of a reasonable judgment, decide to pursue some other career and abandon his pension rights." *Id.* at 1358.

did, in fact, vest twelve days before the court signed the judgment. Further, Cordova indicated he intended to stay with his current employer; he objected to moving to Appleton for precisely that reason. It was therefore "virtually certain" that Cordova would become entitled to the unvested portion of his profit-sharing account. *See Wilder*, 534 P.2d at 1358–59. Under these circumstances, it was unreasonable to assign a value of zero to the unvested portion of the account; the only reasonable determination would have been to assign that interest its full value. Accordingly, we reverse that portion of the judgment and direct the court to evenly divide the full value of the unvested portion of Cordova's profit-sharing account, as of the date of the final hearing.[10]

¶ 33. No WIS. STAT. RULE 809.25 costs are allowed in Derleth's appeal, No. 2012AP2018. Derleth is entitled to such costs in Cordova's appeal, No. 2012AP2802.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions; order affirmed.

---

[10] In the original division, the trial court applied a twenty percent tax penalty adjustment when dividing Cordova's retirement account. On remand, the court may determine whether the figures Derleth cites on appeal have incorporated the adjustment.